PETER GABEL v. A. WEISENSEE.

1. MALICIOUS PROSECUTION—MALICE.—When it appears, in an action for malicious prosecution, that the defendant did not prefer the criminal charge *bona fide*, under a belief of the plaintiff's guilt, but, having no reasonable grounds for doing so, that he instituted the prosecution for the purpose of thereby procuring possession of his property, the act was from an improper motive, and, in a legal sense, malicious.

2. CHARGE OF COURT.—See opinion for evidence offered in a case of malicious prosecution, which, if admitted, could not, under a proper charge, have constituted matter of defense, and therefore not a ground for new trial.

3. EVIDENCE.—In an action for malicious prosecution of plaintiff by defendant, for theft of a dog, the defendant himself, being on the stand, was asked by his counsel the following question, viz.: "State whether, in appearing before the grand jury as a witness against plaintiff, at the time the indictment was found against him, you had any malice against him:" *Held*, Inadmissible, because (1) The question was leading; (2) Because the question was not as to any distinct, intelligible fact, but sought to elicit the conclusion of the witness as to his understanding of the word "malice" in such a connection.

4. MALICIOUS PROSECUTION.—On a trial for malicious prosecution, the

defendant relied on the fact that he began the prosecution as a means of obtaining possession of his property, then in plaintiff's possession. The court charged the jury: "No man can lawfully invoke the aid of the criminal process of the land to merely have decided a question of property, or other civil right; and if you find, from the evidence, that defendant knew that plaintiff did not steal his property, but that his object in instigating such prosecution was to obtain the possession of his property, then he is liable to damages:" *Held*, That there was no error.

ERROR from Harris. Tried below before the Hon. James Masterson.

The statement of this case, which explains the misfortunes of Peter Gabel, and how they grew out of his fondness for his dog, was made by his counsel, and is adopted as correct.

At the June Term, 1872, of the criminal District Court of Harris county, Alexander Weisensee was indicted by the grand jury of that court for the theft of a dog. He was arrested on the 8th of July, 1872, and was released same day, on his executing bond in the sum of $300, in accordance with the statute. At the August Term of the court, the case was continued by the defendant. At the October Term, he was tried, and acquitted.

On the 16th of May, 1873, Weisensee filed his petition in the District Court, setting up the fact of said indictment and trial, and alleging that plaintiff in error had maliciously and falsely caused the indictment to be found, and had maliciously prosecuted the same, and claimed damages therefor.

Defendant, in the court below, after general demurrer, pleaded not guilty, and denied all the allegations in plaintiff's petition.

On the trial, plaintiff introduced the record from the criminal District Court, where he had been tried. He was then sworn in his own behalf, and stated, that about two years before the trial the dog had been left at his house by a boarder; that he never claimed the dog, but knew it belonged to Gabel. Gabel came for the dog several times, and each time drove it away from his premises, to which he offered no re-

sistance. After the indictment was found, he was arrested, but not put in jail. He was allowed by the sheriff to go out and look for bondsmen, which he succeeded in obtaining. He was keeping a boarding-house, and engaged as a painter, at the time he was arrested. Some of his boarders left when he was indicted. He did not know the cause of their leaving. His landlord also gave him some trouble, and told him he was a thief, and did not want such a man in his house. He had spent about $500 in the preparation of his defense; that Gabel told him he wanted his dog, and if he could not get it in any other way he would sue for it.

Several witnesses testified as to the fact that Gabel went several times after his dog, and got it, and of his complaining that Weisensee would not keep the dog away from his house. Some of them were before the grand jury, having been subpoenaed.

R. O. Love, the foreman of the grand jury, testified that he remembered the circumstances about the dog. The district attorney informed the grand jury that Mr. Gabel had a statement to make, and requested the grand jury to send for him, which they did. He also stated that Gabel, in making his statement before the grand jury, said he did not wish to prosecute or to persecute anybody, but only wanted his dog. Objection being made to this statement, it was ruled out, and excluded from the jury; to which ruling of the court the defendant excepted, and saved his point. The defendant's counsel then asked the witness to state any facts in the manner of Gabel's testifying before the grand jury, going to show bad feeling on his part towards Weisensee; or merely the feeling of a good citizen in the discharge of a public duty. To the answering of this question, the plaintiff, by counsel, objected, and the court sustained the objection, and refused to allow the witness to answer; to which ruling the defendant also excepted.

Looscan's testimony is in the opinion.

Gabel, in his testimony, stated that the dog was very use-

ful to him as a rat-terrier.   He then detailed the circumstances of the dog's straying away, and his finding him in plaintiff's possession.   He consulted Major Looscan, who, in his presence, spoke to the district attorney, who said he would bring the case before the grand jury.   He was summoned before the grand jury afterwards.   He never knew what became of the dog.   The following question was then asked the witness by the defendant's counsel: "State whether, in appearing before the grand jury as a witness against Mr. Weisensee, at the time the indictment was found against him, you had any malice against him;" and also the further question: "Whether, in testifying as a State's witness on the trial of Weisensee, under the indictment in the Criminal Court, you had any malice against him." To each of these questions the plaintiff objected.   The court sustained the objection, and refused to allow the witness to answer the same; to which ruling the defendant excepted.

There were verdict and judgment for plaintiff for $500, and motion for new trial, which was overruled.

*Baker & Botts,* for appellant.—To maintain the action, it was incumbent on the plaintiff to prove both the want of probable cause and malice.   Neither alone is, in general, sufficient.   (2 Starkie's Ev., 492.)   Though there was no probable cause, yet if the defendant was not actuated by malice, but acted under an honest belief that there was probable cause for instituting the prosecution, after having taken proper and reasonable precaution to obtain accurate information on the subject as to the law and facts, he cannot be made liable for this action.   (Griffin v. Chubb, 7 Tex., 615.)

From the foregoing authorities, it is evident that malice is one of the ingredients that must be proved to support the action.   The question asked the foreman of the grand jury, which was overruled, was to show the manner in which Gabel testified before the grand jury;—to prove in what capacity he appeared before them: whether he was actuated

by motives of malice, or acting under a sincere and honest belief that a wrong had been committed, which the district attorney had told him it was his duty to report to the grand jury.

All the authorities agree that the grand juror may be compelled to answer whether a particular person testified before the grand jury; and further, whether the person testifying appeared as a prosecutor. How is the defendant to show the want of malice, unless he can establish the manner of his testimony?—and also whether his conduct in testifying, by word or otherwise, evinced any malicious feeling? Nothing in the oath of the grand juror precludes him from testifying: "the State's counsel, your fellows', and your own, you shall keep secret."

Public policy, or the oath of the grand juror, did not forbid him from answering the question. Then the reason of the court, "that he was a grand juror," is not sufficient in law to exclude the testimony.

The questions asked the defendant, and which were overruled, were for the purpose of showing the animus of Gabel in testifying before the grand jury and the Criminal Court. He had stated that he had consulted a lawyer, who referred him to the district attorney. Now, having stated why it was he was induced to approach the representative of the State, the object of the question was to exclude the presumption of any other motive influencing his action than the advice of his own attorney and the district attorney, who had him summoned before the grand jury.

"In his defense, the defendant is not confined to the evidence given in the prosecution; but he may show that he acted *bona fide* upon the opinion of a professional adviser, and, in a word, 'the defendant may give in evidence any facts which show that he had probable cause for prosecuting,' and that he acted *bona fide* upon that ground of suspicion." (2 Stark. Ev., 685, 7th Am. from 3d London ed.; Griffin *v.* Chubb, 7 Tex., 610–612.)

" The rule to be adduced, is that if a party, in good faith, submitted all the material facts to learned counsel, with a view to ascertain his right, and afterwards pursued the course pointed out by his legal adviser, he is not liable to an action for malicious prosecution, notwithstanding his counsel may have mistaken the law." (Stone *v.* Swift, 4 Pick., 393; 2 Greenl. Ev., sec. 459; 3 Phillips' Ev., 262; 2 Stark. Ev., 495; Griffin *v.* Chubb, 7 Tex., 610.)

The defendant in this case finds his lost property in the possession of plaintiff. He obtains possession of it, but is unable to retain it. Feeling the inconvenience resulting from his loss, he consults an attorney, who advises him to lay the matter before the district attorney. While he and his attorney are conversing, the district attorney comes up, and he is told of defendant's grievances. The district attorney informs the grand jury, and requests them to send for defendant. He is subpœnaed, with a number of others, to testify before that body. The grand jury, upon the testimony before them, indict plaintiff. Plaintiff is arrested, immediately gives bond, continues at first term of the court, tried and acquitted at the second term. Plaintiff, nearly a year afterwards, sues defendant for malicious prosecution. Not a scintilla of evidence is introduced, showing malice upon the part of defendant. Defendant endeavors to establish the negative of malice on his part, but is prevented by the ruling of the court. A verdict in favor of plaintiff is rendered. In our opinion, the case should be reversed, not only on account of the error of the court, as shown by bill of exceptions, but because there was no evidence before the jury upon which they could presume malice.

*W. P. & E. P. Hamblen,* for appellee.—The verdict and judgment in this case will be sustained by the court. The law will imply a malice, not to be controverted by such expressions as the witness was called on to detail, when the defendant was before the grand jury. " He said he did not

wish to prosecute or persecute anybody; he only wanted his dog."

Nor was the testimony material. It could not have affected the cause as against the defendant. When taken into consideration with the facts in this case, it was a strange place for Mr. Gabel to appear to get possession of an unruly dog, and a strange proceeding to reclaim the affections of a mangy cur. After the person is injured, and the harm is occasioned by his acts done without reason in law, morals, or good conscience, his expressions before the grand jury were properly excluded by the court.

No court will regard the "feelings of a good citizen in the discharge of a public duty," so far as to call upon the grand jurors of the county to return a runaway terrier to his fond embrace.

As to the second: How would Mr. Gabel define malice? His counsel asked him if he had malice against Weisensee, at the time the indictment was found, and at the trial under the indictment. We humbly submit, that it was not in the possibility of things for Mr. Gabel to have answered this question. The answer to that question involved things that have puzzled greater minds than Mr. Gabel's, and upon which there is even yet much disagreement among jurists. Mr. Gabel's acts should determine, not his opinions. Malice is an act done without just cause. (1 Chit. Gen. Prac., 46.)

It is a technical expression, and means the absence of any excuse. (Penn v. Lewis, Add., 282.)

It is implied in every act for which there is no legal justification, excuse, or extenuation. (Penn v. Honeyman, Add., 149.)

It must be understood, in its legal and technical sense, as merely denoting that which is inferred from the doing of a wrongful act without lawful justification or excuse. (Starkie on Libel, 3.)

Malice is the doing of any act injurious to another without just cause. (Bouv. Law Dic., tit. MALICE; 9 Metc., 93; Darry v. The People, 10 N. Y., 39.)

Malice is the deliberate disregard of the rights of others. (Abbott, C. J., 3 B. & C., 584.)

And thus it was proper for Mr. Gabel to be judged, and not by his opinions of right or wrong; for the opinions of men .are sometimes very crude concerning their duties and obligations.

There was no cause or excuse; the act was reckless and cruel, and unjustifiable. The damages were only compensatory.

GOULD, ASSOCIATE JUSTICE.—In an action for malicious prosecution, it devolves on the plaintiff to prove that the prosecution was instituted maliciously, and without probable cause. (Griffin v. Chubb, 7 Tex., 614; 2 Greenl. on Ev., sec. 449; Add. on Torts, 591.)

The prosecution may be in law malicious, although it does not appear that the defendant acted under the influence of personal hatred, angry feeling, or a revengeful spirit. (Wiggins v. Coffin, 3 Story, 1; Burhans v. Sanford, 19 Wend., 417; 1 Hill. on Torts, 465; Mitchell v. Jenkins, 5 Barn. & Adol., 594.)

In treating of the subject of malicious prosecution, Professor Greenleaf says: "In a legal sense, any unlawful act, done willfully or purposely to the injury of another, is, as against that person, malicious." This definition is quoted in the opinion in Griffin v. Chubb, 7 Tex., *supra*, and apparently received the sanction of this court.

Says Baron Alderson: "Any motive other than that of simply instituting a prosecution for the purpose of bringing a person to justice, is a malicious motive on the part of the person who acts in that way." (Stevens v. Midland Railway Co., 10 Eq., (H. & G.,) 352.) In that case, it was held, that a prosecution without probable cause, "for the purpose of frightening others, and thereby deterring them from committing depredations on the property of the defendant, is not a motive of such a direct character as to afford a legitimate

foundation for a criminal prosecution." Where a prosecution without probable cause was resorted to not in good faith, nor "from motives affecting the public interests," but as an indirect and disingenuous subterfuge to aid in getting possession of disputed premises, it was held to be malicious. (Kenrick *v.* Cypert, 10 Humph., 291.)

So where the defendant, without believing that there were sufficient grounds therefor, but for the purpose of "tying up the mouths of plaintiff" and another party as witnesses in a civil suit, had plaintiff indicted for perjury, the jury thought the word "malice" was strong, but that the defendant acted from an improper motive; and they were told by the court that they might infer malice from the improper motive. (Haddrick *v.* Heslop, 12 Q. B., 267.)

The conclusion from these authorities, is that if the defendant did not prefer the criminal charge *bona fide*, under a belief of the plaintiff's guilt, but, having no reasonable grounds for doing so, instituted the prosecution for the purpose of thereby procuring possession of his dog, he acted from an improper motive, and, in a legal sense, acted maliciously. (Add. on Torts, 593; Haddrick *v.* Heslop, 12 Q. B., 267; Mitchell *v.* Jenkins, 5 Barn. & Adol., 594; Hinton *v.* Heather, 14 M. & W., 131; Brooks *v.* Warwick, 2 Starkie, 393.)

It is claimed that the judgment in this case should be reversed, because the court excluded evidence tending to disprove the existence of malice.

There is a bill of exceptions, showing that the court excluded the testimony of the foreman of the grand jury, to the effect that the defendant, in his statement before the grand jury, disclaimed "any desire to prosecute or persecute anybody; he only wanted his dog." This evidence seems to have been offered under the mistaken idea, that the motive of getting his dog was so far justifiable, that proof of such a motive tended to rebut the existence of malice. The same mistaken idea, that bad feeling on his part towards Weisensee was essential to plaintiff's case, led appellant to propose to

interrogate the grand juror as to the facts in his manner of testifying going to show such bad feeling, or "merely the feelings of a good citizen in the discharge of a public duty."

Appellant claims that this evidence was erroneously excluded, and denies that public policy, or the oath of the grand juror, justified the court in refusing to order it. The only authority cited by counsel, is Greenleaf on Evidence, sec. 252, where the reasons for requiring secrecy in the proceedings of the grand jury are thus stated: "One reason may be, to prevent the escape of the party, should he know that proceedings were in train against him; another may be, to secure freedom of deliberation and opinion among the grand jurors, which would be impaired, if the part taken by each might be made known to the accused. A third reason may be, to prevent the testimony produced before them from being contradicted at the trial of the indictment, by subornation of perjury on the part of the accused." Counsel claims that none of these reasons apply to the questions asked and excluded in this case. But if inquiry be allowed at any time into what the defendant stated, and how he deported himself in testifying before the grand jury, it would seem difficult to prevent its extension to the part taken in his examination by the different members of the grand jury, and their deportment towards him; and it is evident that the liability to such an exposure, at any future time, might interfere with the perfect freedom of action of the members of the grand jury. In the very section cited by counsel, Professor Greenleaf says of the grand jurors, clerk, and prosecuting officer: "They are not permitted to disclose who agreed to find the bill of indictment, or who did not agree; nor to detail the evidence on which the accusation was founded." The reason of the obligation of the grand jurors to keep secret the part taken by individual jurors, is, in part at least, not temporary, but continuing. That obligation, however, has not been held to prevent grand jurors from testifying to establish perjury committed by a witness in giving his evidence before them; (4 Blackst.

Comm., 126, note 5, by Christian;) and there are modern authorities which hold, that "in all cases where necessary for the protection of the rights of parties, whether civil or criminal, grand jurors may be witnesses." (1 Whart. on Ev., sec. 601, and authorities cited in note, some of which are: The State *v.* Broughton, 7 Ire., 96; Comm. *v.* Mead, 12 Gray, 167; Comm. *v.* Hill, 11 Cush.; Burnham *v.* Hatfield, 5 Blackf., 21.)

We do not feel called on in this case to decide whether, in cases of malicious prosecution, the same rule applies as in cases of perjury. It is worthy of remark, however, that, since this case was tried in the court below, the Legislature have changed the ancient form of the oath taken by grand jurors, so that it reads: "The State's counsel, your fellows', and your own, you shall keep secret, unless required to disclose the same in the course of a judicial proceeding, in which the truth or falsity of evidence given in the grand-jury room, in any criminal case, shall be under investigation." Leaving the entire subject for future and further investigation, it is enough to dispose of the case before us, that even if the court erred in excluding the questions asked by appellant as already stated, the evidence excluded could not, under a proper charge, have produced, or tended to produce, a different verdict; and that the error, therefore, constitutes no sufficient reason for reversing the judgment. That the defendant went before the grand jury with a criminal charge against plaintiff only to get his dog, rather tended to establish the plaintiff's case than to make out a defense, even if his demeanor were such as to exhibit no bad feeling towards plaintiff. The jury gave damages only to the amount of actual expenses of plaintiff growing out of the prosecution, as testified to by plaintiff, there being no other evidence on that subject. As it is evident that no exemplary damages were allowed, but only actual damages, it would be going too far to reverse the case for the exclusion of evidence which did not bear on the issue of the plaintiff's right to a verdict or the amount of actual damages, but which could only have tended to show that the

defendant's motives were not as bad as they might have been, and to induce the jury to find lighter exemplary damages than they might otherwise have found.

The defendant himself being on the stand, as a witness in his own behalf, his counsel asked him to "state whether, in your appearing before the grand jury as a witness against Mr. Weisensee at the time the indictment was found against him, you had any malice against him." The court sustained an objection to this question, and a similar one in regard to the motive of witness in testifying on the trial of the indictment, on the ground (1) that the questions were leading, and (2) that it was for the jury to say from the facts whether there was or was not malice, and that this was not a fact in regard to which defendant could testify. Very evidently, the question asked was not as to any distinct intelligible fact, but sought to elicit from the witness his inference or conclusion involving his correct understanding of the meaning of the word malice in such a connection. The question was not a proper question.

There was evidence that defendant went to Major Looscan, who was an attorney at law, and told him about the dog. Mr. Looscan says that Gabel told him that "Weisensee had his dog, and he wanted to know what he should do about it; and he told Mr. Gabel to go to Mr. Weisensee, and if he (Weisensee) refused to give the dog up, then to go to the district attorney about the matter." "Does not know if Gabel detailed all the facts to him or not. He (witness) advised Mr. Gabel upon the facts above stated, and knew only such facts as stated by Gabel. Gabel paid him no fee." It appears that the district attorney was spoken to, and said he would bring the case before the grand jury. It does not appear what information, as to the facts, Gabel gave the district attorney; nor does it appear that Gabel complied with Looscan's notice, and went to Weisensee, who refused to give him his dog. Gabel himself only says that Weisensee refused to whip it away.

The complaint is, that, under this state of facts, it was error for the court to instruct the jury, that "No man can lawfully invoke the aid of the criminal process of the law to merely have decided a question of property, or other civil right; and if you find, from the evidence, that Gabel knew that Weisensee did not steal his dog, but that his object in instigating the criminal prosecution (if he had instigated such prosecution) was to obtain the possession of said dog, then he is liable in damages, &c." It is not complained that there is error in that part of the charge which submitted to the jury the defense that Gabel acted in good faith, on the advice of counsel, to whom he had stated the material facts, but that the charge above recited was calculated to mislead. We think the charge recited was the law of the case, and was in all respects proper and appropriate.

We have given the case a careful examination, and our conclusion is that the judgment be affirmed.

AFFIRMED.