## WM. HOLT, JR., V. A. G. FOLLETT.

(Case No. 2213)

1. OYSTERS—OYSTER-BEDS—RIGHTS OF RIPARIAN OWNER—ACT OF MARCH 8, 1879— Under the act of March 8, 1879, for the preservation of oysters and oyster-beds, and for protecting the rights of persons to the same, etc., the owner of land bordering on any unnavigable creek, lake, bayou or cove is also the true and legal owner of the oyster-beds along the entire front of his land, from low-water mark to the center of such creek, lake, bayou or cove ; or if the lake, bayou or cove, upon which his land borders, is public, navigable water, then the owner of the land is the owner of the oyster-beds along the entire front of the land, and extending out from low-water mark into such lake, bayou or cove, for a distance of one hundred yards.

2. SAME—TRESPASSER—RIPARIAN OWNER—ACT OF MARCH 8, 1879, CONSTRUED—So long as the owner of the land is content with what the law gives him by virtue of his riparian ownership, he is protected by the imaginary line running at a distance of one hundred yards from low-water mark along the entire front of his shore ; and, to constitute one a trespasser, in the meaning of the law, who, without the consent of the owner of the land, takes oysters within such space, it is not necessary that the owner shall have first designated it by staking it off. That provision of the act of March 8, 1879, which requires one's location to be designated by stakes planted at its four corners, applies only to those cases where the riparian owner, or other person, wishes to secure a right beyond these limits.

3. SUIT FOR MALICIOUS PROSECUTION—PROBABLE CAUSE—MALICE—LATTER NOT A LEGAL INFERENCE—In order to sustain a suit for malicious prosecution, both malice and want of probable cause must combine. The former may be inferred from the latter, but it is not a legal inference.

4. SAME—PROBABLE CAUSE—MALICE—PROOF—When want of probable cause is first shown, then malice may be established by proof that the prosecution was not commenced for any other purpose than to subserve the private interests of the prosecutor; but, if probable cause is shown, no matter what evidence of malice may be introduced, the suit must fail.

5. SAME—PROBABLE CAUSE—ADVICE OF COUNSEL—Where one who has prosecuted another for a criminal offense had probable cause for so doing, it is immaterial whether or not he first consulted an attorney, or what the advice he received from the attorney was.

APPEAL from Brazoria.   Tried below before the Hon. W. H. Burkhart.

This suit was instituted, May 9, 1884, in the district court of Brazoria county, by Wm. Holt, against. A. G. Follett, for damages for malicious prosecution.

On November 3, 1883, A. G. Follett made affidavit before a justice of the peace, in Brazoria county, charging William Holt with trespassing on his private shores.   Holt was arrested under this charge and tried, and a fine imposed upon him by the justice, Follett appearing and prosecuting the case, but, on appeal to the county court, the proceedings against Holt were dismissed, and he was discharged. Shortly thereafter, Follett made another affidavit against Holt, charging him with theft of oysters from affiant's private beds.   Holt was arrested a second time, Follett again appearing and prosecuting, but the justice dismissed the case and discharged the prisoner.   Holt claimed in his petition that these criminal proceedings, instituted against him by Follett, were malicious and without probable cause.

The facts, as disclosed by the record, are as follows:   A. G. Follett, the defendant, owned a league of land lying between the Gulf of Mexico and Oyster bay, in Brazoria county, and fronting for some distance upon the latter, whose waters, at that point, were rich in oysters.   Holt, who was engaged in the oyster business, had, for some time previous to his arrest, been openly in the habit of taking oysters from that portion of Oyster bay immediately in front of Follett's land, within less than one hundred yards of the shore, and sometimes as near thereto as five or ten feet.   As soon as he was discovered by Follett, the latter remonstrated with him, stating that the oyster-beds along the front of his land, and particularly in the cove from which Holt was taking oysters, were his private property, and that unless Holt desisted from further trespassing upon them, he, Follett, would be under the necessity of having him arrested, to which Holt replied that he was in public waters, and would continue to take oysters therefrom, at any point therein that suited him, until Follett staked off, in accordance with law, the particular locations claimed by him, when he, Holt, would respect them. Holt was seen several times, afterwards, in company with others engaged in like business, taking oysters from the same locality, and within a very few feet of the shore, on Follett's side of the bay, and it was then that Follett commenced criminal proceedings against him.

The cove or prong of Oyster bay, from which Holt took the oysters, varied in width from two hundred to six hundred yards.   No vessels carrying freight or passengers ever navigated these waters, but oyster-

boats and fish-boats, sometimes as many as fifteen or twenty, would often visit them.    Follett, before commencing proceedings against Holt, consulted an attorney, who advised him to pursue the course he did pursue ; and, on the trial of this cause, he testified that his motive in prosecuting Holt was to prevent him and others from further depredating upon his oyster-beds.

Follett denied the malice charged in the petition, and specially pleaded the foregoing facts.

The cause was tried by a jury, and resulted in a verdict and judgment for the defendant.    Plaintiff appealed.

*E. J. Wilson* and *J. A. Ballowe*, for appellant, on the questions of malice and probable cause, cited :    Gabell *v.*Weisensec, 49 Tex. 131, 132.

No brief on file for appellee.

WILLIE, CHIEF JUSTICE.—Unless it was necessary that Follett should stake off the oyster-beds claimed by him, in order to give himself exclusive ownership of them, the entire case of the appellant, as presented to this court, falls to the ground.

The act of March 8, 1879, "for the preservation of oysters and oyster-beds, and for protecting the rights of persons to the same, and affixing penalties," seems to provide for four classes of cases :

1. Where the cove, bayou, or lake is not navigable, and runs through the lands of any person, such person has the exclusive right to plant or sow oysters in such stream or body of water.

2. Where land borders upon such lake, bayou, or cove, the owner has an exclusive right to sow or plant oysters to the center or middle of the water.

3. Where the lake, bayou, or cove is public, navigable water, any person owning land bordering upon it has the exclusive right to locate oyster-beds for a distance of one hundred yards from low-water mark.

4. Where a person wishes to obtain a location for planting oysters within any public, navigable waters, he can do so by designating a square space, not exceeding two hundred yards square, intended by him for such purpose, by not less than four stakes planted at each corner of the reservation.

It is clear that the provisions, as to this last class, are not intended to apply to any of the preceding, for many reasons. In the first place, its provisions apply only to navigable waters.    In the next place,

they cannot be referred to any waters, except such as lie beyond a distance of one hundred yards from the shore, for all persons are expressly prohibited from locating any private oyster-beds in public, navigable waters, within that distance from low-water mark. And, again, no one can, by staking, derive a right to more than two hundred yards of square space, whereas, the law expressly gives to the riparian proprietor an exclusive right for the whole distance his land fronts upon the water. The necessity, too, of designating, by stakes, the space claimed in water distant from the shore is very apparent. It must be marked in some way to designate it, so that the claimant may know where his beds are located, and others may be able to avoid trespassing upon them. But the space intervening between low-water mark and a line one hundred yards distant therefrom, is easily ascertained; the riparian owner has no difficulty in knowing the extent of his privilege, and all others have fair warning that they must keep beyond the designated limits. Should the owner of the land wish to secure an additional right beyond these limits, he must stake off his claim, of no more than two hundred yards square, like anyone else; but, so long as he is content with what the law gives him by virtue of his riparian ownership, he is protected by the imaginary line running one hundred yards from low-water mark along the whole length of his shore.

These views lead us to the conclusion that Follett was the true and legal owner of the oyster-beds, upon which the appellant trespassed, and for taking oysters from which, the latter was subject to a criminal prosecution. The whole weight of the testimony went to show that the cove in which these oysters were bedded was not public, navigable water. But, admitting that it was, the uncontradicted evidence showed that the oysters were taken within less than one hundred yards from land bordering upon the cove, which was owned by the appellee.

These oyster-beds were, under the statute, the exclusive property of Follett, and the taking of oysters from these beds, without his permission, was theft, by the very terms of the statute. The statute does not require that the taking should be done secretly, and the open and defiant manner in which the appellant trespassed upon the property of Follett does not, therefore, lessen his offense.

The appellee, under the uncontroverted facts of the case, had not only probable but just cause for instituting against appellant the prosecution which formed the ground of this action, and, under any proper charge, the jury were bound to find for the defendant. There is nothing in any charge of the court, or any refusal of the

court to instruct for the appellant, of which he can complain. As Follett had probable cause for prosecuting Holt, it matters not whether he consulted an attorney or not, or what advice he received from the attorney. The advice he received was correct, no matter whether stakes were planted or not, and he was justified in acting upon it.

As to the principle contended for, that the prosecution was necessarily malicious, because instituted for the purpose of testing whether or not the appellee had exclusive ownership of the oyster-beds, counsel mistakes the law upon that subject, as also the decisions of this court, to which he refers as authority. In order to sustain a suit for malicious prosecution, both malice and probable cause must combine. The former may be inferred from the latter, but it is not a legal inference. Where want of probable cause is first shown, then malice may be established by proof that the prosecution was not commenced for any other purpose except to subserve the private interests of the prosecutor. But, if probable cause is shown, no matter what evidence of malice may be introduced, the suit must fail. The two elements necessary to make out the case have not been shown to exist. The court gave the charge asked by the appellant on this subject, making it, in effect, essential, however, that want of probable cause should have been proved. As the proof was wholly lacking in this respect, and the positive and undisputed evidence was all to the contrary, the verdict was correct, and the judgment is affirmed.

AFFIRMED.

[Opinion delivered February 23, 1886.]