**J. C. PENNEY COMPANY, Appellant,**

**v.**

**Charles GILFORD, Appellee.**

**No. 15121.**

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Nov. 30, 1967.

Rehearing Denied Dec. 21, 1967.

George H. Kolb, Houston, for appellant, Baker, Botts, Shepherd & Coates, Houston, of counsel.

Bohn E. Phillips, Houston, for appellee, Sam S. Emison, Jr., Houston, of counsel.

COLEMAN, Justice.

This is a suit for damages. The cause of action is based on malicious prosecution or, alternatively, abuse of process. The trial was to the court without a jury and resulted in a judgment for the plaintiff in the sum of $2,500.00 for actual damage, but no punitive damages were allowed. Findings of fact and conclusions of law. were filed by the trial judge.

The more important questions presented by this appeal as to the cause of action based on malicious prosecution are: (1) whether the evidence shows as a matter of law that appellant had probable cause to investigate criminal proceedings against appellee, and (2) whether the fact that appellee filed the complaint against appellant after consultation with, and on the suggestion of, the District Attorney, constituted a defense to the action.

On October 23, 1964, two negro men appeared at the J. C. Penney store in Marshall, Harrison County, Texas, to cash a $100.00 money order. The instrument recited on its face that it was purchased by Ida Mae Gilford, 2314 Bringhurst Street, Houston, Texas, and was payable to the order of Charlie Gilford. It recited that it was issued by Sellers Bros. Grocery Store No. 2. It was drawn on the account of Travelers Express Company, Inc. in First National Bank, Hudson, Wisconsin. The name "Charlie Gilford" was endorsed on the back of the instrument.

As identification one of the men presented a Texas Operator's License issued to Charlie Gilford, 2314 Bringhurst Street, Houston, Texas. L. B. Thompson, manager of the store, wrote the license number and Houston address on the money order and gave the men $100.00 and they left.

The money order was presented to the drawee bank in the regular course of business and was returned to J. C. Penney with the notation that payment was refused because the instrument was stolen. Thompson called Charles Allen, District Attorney for Harrison County, and asked for assistance in collecting the money he had paid on the instrument. After talking to Mr. Allen, Thompson went to his office and delivered the money order to him. Allen then mailed a certified letter to Charlie Gilford at the address taken from the driver's license, which stated in effect that a money order in the amount of $100.00 purchased from Sellers Bros. Grocery # 2 was cashed at the J. C. Penney Store in Marshall and payment on it was refused by the bank because it was stolen. The letter also said that the money order was reportedly sent from Ida Mae Gilford of 2314 Bringhurst Street, Houston, Texas, and that the person cashing the mon-

ey order had "your driver's license as identification." It then concluded: "Unless we receive a money order to cover this $100.00 within ten (10) days of date of this letter, it will be our duty to accept a complaint against you for swindling with a worthless check and have a warrant issued for your arrest." A copy of this letter was sent to Thompson, who read it.

Charlie Gilford received this letter, but did not reply. After the ten day period had elapsed, the District Attorney's office called Mr. Thompson and informed him that no reply had been received although the letter had not been returned, and informed him that "the only way they could further help me was to—for us to have a warrant issued for investigation of Charles Gilford."

Thompson then went to the District Attorney's office and was given a form complaint for swindling with a worthless check, the blanks in which had been filled out with the possible exception of attaching a copy of the money order. He took the complaint to the office of the Justice of the Peace where he signed it. This complaint charged that Charlie Gilford knowingly and with intent to defraud did obtain from L. B. Thompson $100.00 by giving and drawing his check in that sum on First National Bank of Hudson, Wisconsin. A copy of the money order was then attached, and the complaint concluded: "And said defendant did then and there deliver said check to said injured party and did then and there represent to said injured party that said check was good, which representation was false, said defendant knowing at the time the check was delivered that he did not have sufficient funds in said bank to pay said check in full, and all other checks, drafts and orders then outstanding and the said injured party relied upon and was deceived by the representations of said defendant that said check was good; and said check was duly presented to said bank for payment and payment was refused by said bank for want of sufficient funds in the name and

account of Charlie Gilford against the peace and dignity of the State."

A warrant was duly issued on the complaint and Charlie Gilford was arrested in Harris County and placed in the Harris County jail, where he was held for six days and then transferred to the Marshall jail where he was held five more days. He was finally taken to the District Attorney's office where Thompson saw him and told the District Attorney that he was not one of the men who cashed the money order. He was then released.

Before he signed the complaint Thompson gave the District Attorney all of the information he knew except a description of the men cashing the money order. He knew that they were between the ages of 25 and 32, about six feet tall, very dark in complexion, and wore glasses. Gilford was shorter, about 55 years old, much lighter in color, and had less hair. Thompson testified that he was only interested in getting his money back and did not desire to prosecute anyone. He said he would have written off the money order as a loss if he had known Gilford was to be arrested as a result of the complaint, and that he would not have signed it had he not thought it a warrant for investigation. He said he knew that some of the allegations in the complaint were not true when he signed it.

Gilford testified that he did not reply to the letter because it did not ask for an explanation, but said that if he did not send $100.00 he would be arrested and he had not cashed the money order. The District Attorney testified that he had Thompson swear to a complaint of swindling with a worthless check when he knew that theft by false pretext was the applicable charge for that type of crime. On the warrant for arrest there was a notation in handwriting reading: "Do not give bond. We want him here. Ass't. D. A. Watson." Watson was the Assistant District Attorney. There is no competent evidence as to who made the notation, and no evidence that Thompson

knew that such instructions were to be given or had been given.

The trial court found that L. B. Thompson, in causing the commencement of the criminal prosecution of the plaintiff, was not activated by any personal ill will or personal malice toward the plaintiff. The court also found that the defendant had no probable cause to commence the criminal prosecution against the plaintiff, and that its conduct in so doing was deliberate conduct. He found that Thompson, in making the affidavit, knew that Gilford had not committed the crime with which he was charged and that he did not rely on any representation of the District Attorney to the effect that Gilford had committed a crime, with which he was charged. He found that the District Attorney knew that Gilford had not committed the crime with which he was charged and that it was the joint purpose of Thompson and the District Attorney, in falsely charging him with the crime reflected in the affidavit, to compel Gilford to make good the loss sustained by J. C. Penney Company in cashing the money order. The court found that Thompson gave the District Attorney no physical description of the man who cashed the money order other than his race, although he knew the person's approximate age, height, weight and other characteristics.

■ To maintain an action for malicious prosecution it must be proved that there was a prosecution by the defendant, that it was malicious, that it was without probable cause, and that the prosecution has ended in an acquittal. Probable cause has been defined as the existence of such facts and circumstances as would excite the belief, in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted. Malice may be inferred from circumstances if they are such as to satisfy the mind that the party was actuated by wrongful motives in the institution and continuance of the prosecution. The wrongful motive, coupled with a wrongful act wilfully done to the injury of another, constitutes legal malice. Aldana v. Tavazon, 15 S.W.2d 678 (Tex. Civ.App., El Paso 1929, n.w.h.), citing Usher v. Skidmore, 28 Tex. 616, 622, Ramsey v. Arrott, 64 Tex. 320, and other cases.

■ The findings of fact of the trial court clearly establish the facts necessary to sustain this cause of action. The finding of no personal ill will on the part of Thompson toward appellee does not defeat the cause of action. Meyer v. Viereck, 286 S.W. 894 (Tex.Civ.App., Galveston 1926, writ dism.) 37 Tex.Jur.2d, Malicious Prosecution, § 13, p. 534.

■ The only evidence, or circumstance, tending to show that appellee was guilty of any offense is the fact that his driver's license was used as identification, and that he did not respond to the letter demanding that he pay $100.00. It would seem unlikely that one passing a stolen instrument would give his correct name and address to the person he was planning to defraud. Appellant testified that he knew that stolen or lost identification papers were used by confidence men in similar swindles. Thompson testified that he knew that appellee was not guilty of the offense with which he was charged.

The findings of fact filed by the trial court have not been directly attacked by points in appellant's brief. Appellant's second point is that the evidence conclusively shows that J. C. Penney had probable cause to suspect that Gilford had committed a crime. We cannot agree that this is the only reasonable conclusion to be drawn from the facts known to appellant. In any event appellant had no cause to suspect that Charles Gilford was guilty of the crime with which he was charged, i. e., swindling with a worthless check.

In Reed v. Lindley, 240 S.W. 348 (Tex. Civ.App., Ft. Worth 1922, n.w.h.), the court pointed out that to support an action for

malicious criminal prosecution the plaintiff must prove "that the *charge preferred against him* was unfounded, and that it was made without probable cause." (Emphasis added)

In Sebastian v. Cheney, 86 Tex. 497, 25 S.W. 691 (1894), the court held:

"Plaintiff in error complains of the seventh clause of the charge given by the court, which is as follows: 'In this state no one can invoke the criminal law to merely have decided any civil question affecting the indebtedness due from one citizen to another, or other civil right; and if you find from the evidence that Sebastian knew that Cheney did not steal or embezzle his cotton, but his object in instigating the criminal prosecution, or prosecutions, (if you find that he did instigate such prosecutions,) was to obtain the payment to him by Cheney of his (the defendant's) part of the rent cotton, then the defendant is liable to the plaintiff in damages.' It is objected that this charge is upon the weight of the evidence. We think that the charge announces a correct proposition of law. Gabel v. Weisensee, 49 Tex. 131; Holt v. Follett, 65 Tex. 550, 554. The charge guards the interests of the defendant by requiring that it should appear that the defendant knew that plaintiff was not guilty, as he charged, before he could be held liable in damages, which was more favorable to defendant than the law justified. If there was no probable cause for the prosecution, and defendant instituted it to collect his demand, he would be liable. The charge of the court, as a whole, is a fair presentation of the law upon the issue submitted by it."

In Grissom v. Lopez, 280 S.W. 613 (Tex. Civ.App., San Antonio 1926, writ dism.), the court said: "If appellant made the affidavit in good faith, believing, in the light of the facts, that appellee was guilty of embezzlement, he would not be liable to damages simply because he may have also desired to collect money owed to him by appellee."

However appellant says that it should not be held in damages because it made a full disclosure of all material facts to the District Attorney and filed the complaint upon his suggestion.

In Missouri, K. & T. Ry. Co. of Texas v. Groseclose, 50 Tex.Civ.App. 525, 110 S.W. 477 (1908, n.w.h.), the court, relying on Sebastian v. Cheney, 86 Tex. 502, 25 S.W. 692, stated: "We understand the effect of the ruling to be to establish, in this state as matter of law, that the advice of the state's attorney, given as such, and in the discharge of his official duty, upon a fair statement of the facts, is probable cause, which will justify the institution of a prosecution."

The court further stated: "We go no farther than to hold that, if it should be shown that the statement was a full and fair one of all the material facts known to them, the advice of the assistant county attorney would be probable cause for the prosecution commenced, * * *."

In Sebastian v. Cheney, supra, the Supreme Court said:

"The question involved in this case is: If a citizen, in good faith, fairly and honestly communicate to the county attorney all of the facts known to him concerning the charge of which he makes complaint, shall be held responsible in damages at the suit of accused if the attorney, the officer of the state, makes a mistake in determining as to whether or not there is probable cause for the prosecution? * * * We have found no case where it is held that a citizen who in good faith makes a fair statement of the facts, as known to him, to the prosecuting officer, will be held responsible in damages for the prosecution inaugurated by such officer. The contrary doctrine is well established by courts of eminent ability."

In Brady v. Georgia Home Ins. Co., 24 Tex.Civ.App. 464, 59 S.W. 914 (1900, writ ref.), the court said:

"The question in cases of tort is whether or not the complaining party has suffered a legal wrong at the hands of the defendant, and the good or bad motive back of the action cannot make a right action wrong, or a wrong action right, in the eyes of the law. As said by Cooley in his work on Torts (page 832): 'Malicious motives make a bad act worse, but they cannot make that a wrong which in its own essence is lawful.' To apply it to this case, if Matthews acted upon probable cause in making the affidavit against Brady, appellees are not liable, no matter if the object of the prosecution was to defeat payment of the insurance money. Citizens should be encouraged in enforcing the laws of the country, and should not be deterred from attempting to punish one whom they have probable cause to believe to be guilty, although their activity may be the outcome of sinister motives. It is the rule, it is true, that, to justify a prosecution on the ground that it was advised by an attorney, a statement of all the facts known to the prosecutor *must be made in good faith,* which would seem to contain the idea that motive might be of consequence in cases of malicious prosecution; *but the matter of good faith refers, not to the object of the prosecution, but to the honest desire of the prosecutor to ascertain if the facts stated make out a case against the accused.* * * * There was evidence tending to show that Matthews acted in good faith, and fairly and honestly communicated all the facts known to him to the county attorney, and that the latter determined that there was probable cause for the prosecution; and consequently the court did not err in submitting that issue to the jury, even though such charge had not been also asked by the appellant." (Emphasis added)

This Court has heretofore emphasized the idea that prosecutions should be initiated by a private citizen only when he is in good faith seeking to promote the general interest pursuant to an honest desire to see the law of the land upheld. Meyer v. Viereck, supra.

In an annotation found in 10 A.L.R.2d 1200, at 1244, the author states: "The rule that advice of prosecuting officer may be a defense in an action for malicious prosecution supposes that the party seeking the advice does so in good faith."

█ In this case appellant does not contend that he sought or received the advice of the District Attorney on the question of the guilt or innocence of appellee of any crime, except such as might be implied from the fact that the District Attorney prepared a complaint and suggested that he file it. Appellant sought help in recovering the money it lost. When the letter failed to produce results, he sought advice on further steps to be taken in pursuit of the same objective. There is no indication that he was motivated by an honest desire to see the law of the land upheld, or that he sought the advice of the prosecutor as to whether on the facts presented appellee had violated the law. Appellant withheld material facts known to him from which the District Attorney, by making further investigation, could have determined that appellee was not guilty of any offense. Additionally, appellant's agent testified that when he signed the complaint he knew appellee was not guilty of the offense with which he was charged. The trial court has found, in effect, that appellant did not seek the advice of the District Attorney in good faith, and this finding is supported by the record. .

We, therefore, find that appellant had no probable cause to institute criminal proceeding against appellee. The trial court did not err in entering the judgment from which this appeal was taken.

Appellee has also alleged a cause of action based on abuse of process. In view of this opinion, it is not necessary to dwell at length on this aspect of the case.

The elements of an action for abuse of process are stated to be: (1) that the defendant made an illegal, improper, perverted use of the process, a use neither warranted nor authorized by the process, and (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of process, and (3) that damage resulted to the plaintiff from the irregularity. 1 Am.Jur.2d, Abuse of Process, § 4.

While it might be argued on respected authority that procuring the issuance of a warrant of arrest and the subsequent arrest of one for the purpose of extorting the payment of money to the one so procuring the warrant by the one arrested would constitute a sufficient basis for the action of abuse of process, ibid, § 12, we are committed to the view that an action for abuse of process cannot be maintained where the process was employed to perform no other function than that intended by law. The mere issuance of process is not actionable as an abuse of process. There must be use of the process, and that use must of itself be without the scope of the process, and, hence, improper. Blackstock v. Tatum, 396 S.W.2d 463 (Tex.Civ.App., Houston 1965, n.w.h.).

Here, after the process was issued, appellee was arrested and placed in jail. There is no evidence that he was requested to pay the $100.00 at any time after the complaint was filed. There is no evidence that appellant knew that the Houston officers were requested to deny bail or that appellee was denied bail.

It is also the rule that:

"Liability for an abuse of process committed by an officer or his deputy, extends to all persons who knowingly procure, aid, abet, participate in, or subsequently adopt or ratify the act which constitutes the abuse. * * * one who places a valid writ in the hands of an officer without directions as to the manner of its service is not liable for the trespasses and lawlessness of the officer in executing it unless, with knowledge of the facts, he advised or assisted in the abuse of process; or subsequently ratified the officer's acts." 1 Am.Jur.2d, Abuse of Process, § 17.

The evidence in this case is not sufficient to authorize a judgment based on the cause of action for abuse of process.

The judgment of the trial court is affirmed.

PEDEN, J., not participating.