**Leo CRIEP, M.D., Plaintiff,**

v.

**SENTRY INSURANCE, A Mutual Company, and Sentry Claims Service, Defendants.**

**Civil Action No. H–97–2692.**

United States District Court,
S.D. Texas,
Houston Division.

April 16, 1999.

Paul F. Waldner, III and Arnold Anderson Vickery, Vickery & Waldner, Houston, TX, for plaintiff.

Marc A. Sheiness, Hirsch, Sheiness, Scott, Grossman & Cohn, Houston, TX, for defendants.

Richard M. Law, Dunn Kacal Adams Pappas & Law, Houston, TX, for intervenor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

HITTNER, District Judge.

Plaintiff Leo Criep filed this lawsuit against defendant Sentry Insurance alleging claims of malicious prosecution, witness tampering, abuse of process and intentional infliction of emotional distress. Criep's claims arise from a state court lawsuit against him filed by Sentry Insurance, after Criep's treatment of Teofilo Palacios. Criep alleges that the lawsuit against him was improperly filed to secure his testimony against his co-defendants. Before trial, the Court dismissed Criep's claim of witness tampering.

This case was tried to the Court on January 4–6, 1999. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure

the Court makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

1. Plaintiff Leo Criep is a medical doctor in his mid-fifties.

2. On February 14, 1992, Teofilo Palacios sustained a severe brain injury at work. Defendant Sentry Insurance was the workers' compensation insurance carrier for his employer, and, as such, was required by law to pay for all reasonable and necessary medical expenses for the rest of Mr. Palacios' life. The actual expenditures, plus reserves for future expenditures, were approximately $3,000,000.

3. In May, 1994, Mr. Palacios apparently fell out of his bed at the hospital and injured himself further. He was taken to the emergency room for evaluation. Dr. Criep, who was on call for Mr. Palacios' attending physician, was called to treat the patient.

4. After diagnostic testing and evaluation, it was determined that Mr. Palacios had a subdural hematoma, and emergency neurosurgery would be necessary. To prepare him for the procedure, Dr. Criep attempted to insert a central line, and, in the process, believed he had inadvertently punctured the left lung. This injury is a known risk of the insertion of a central line that occurs in a significant number of patients. The radiologist on call did not believe that Dr. Criep had punctured the patient's lung.

5. Dr. Criep, being aware of this risk, discovered the injury immediately and treated it properly by the insertion of a chest tube. He also fully documented the incident.

6. Sentry initiated an investigation of the secondary injuries to Mr. Palacios relating to his fall from the hospital bed to determine if there was any negligence by the hospital or treating physicians. The matter was assigned to subrogation specialist Jean Kelderman Chance. Ms. Chance hired Texas attorney Mickey Shyrock to represent Sentry.

7. The evidence at trial indicated that Sentry was well aware, before the *Palacios* suit was filed, that it would be necessary to have proof from a medical expert to establish the standard of care, testify to a deviation from that standard by Dr. Criep, and make the causal nexus to quantifiable damages, with respect to "each" defendant. In spite of this knowledge, and of Sentry's ready access to medical expertise, it never conducted a good faith investigation of any potential negligence claim against Criep before the suit was filed.

8. However, on May 3, 1996, a decision was made by Sentry to sue Dr. Criep. A memorandum from Ms. Chance at Sentry to Attorney Mickey Shyrock explained Sentry's rationale and motivation:

> "We doubt that Dr. Criep's alleged lung puncture on 5/14/94 caused these problems, however, **it's a longshot possibility** that could be used for **negotiation purposes** later." (emphasis supplied)

Although Ms. Chance testified that she had the authority on behalf of Sentry to institute the suit against Dr. Criep, and did so, in testimony she explained that the "we" referenced in the memorandum included other people within and on behalf of Sentry.

9. The referenced memorandum, along with other allegedly privileged documents, was voluntarily, though perhaps inadvertently, produced by Sentry as part of the discovery process in the *Palacios* state court litigation. Even after becoming aware of this disclosure, Sentry never claimed its purported privilege or otherwise demanded the return of the documents until trial in this suit. Thus, the Court finds that any claim of attorney-client privilege with respect to this inadvertent disclosure has been waived.

10. When this memorandum is considered with the other pre-suit correspondence explaining the necessity and difficulty of getting an expert witness for this case, and other evidence, (*e.g.* the fact that no investigation was made whatsoever of the claim against Criep), and with the sub-

sequent events set forth below, it is compelling proof that Sentry had an ulterior motive for naming Criep in the lawsuit: to wield the pressure and threat of a continued lawsuit against Criep as an improper "negotiation" tool, to influence him into giving testimony against other co-defendants, or, at a minimum and last resort, to withhold his testimony.

11. Following the directions of Sentry, attorney Mickey Shyrock filed suit against Criep, the emergency room physician, and the hospital. The suit was styled as: *Teofilo Palacios, et al., vs. American Transitional Care Centers of Texas, Inc., et al.;* no. 96–24184, In the 280th District Court of Harris County, Texas.

12. Although Mr. and Mrs. Palacios were named as plaintiffs, it is apparent that the moving force behind the lawsuit was Sentry. Under the Texas Worker's Compensation Act, Sentry had a right of subrogation with respect to its past medical and indemnity payments. Additionally, if a recovery had been made against a third party, under the law, Sentry would get a dollar for dollar credit for any net recovery against Mr. Palacios' future medical care. Given the financial requirements for continued care of Mr. Palacios, this made it highly unlikely that there would be much financial benefit in the suit for the Palacios family.

13. The *Palacios* suit alleged that the hospital was negligent in allowing Mr. Palacios to fall out of bed, the emergency room physician was negligent in not ordering diagnostic tests in a timely fashion, and Dr. Criep was negligent in puncturing one of his lungs while attempting to insert the central line.

14. Sentry and Shyrock did nothing to investigate or prove the allegations of negligence against Dr. Criep, either before or after the filing of the suit. Although Sentry had access to retained physicians and other health care personnel, it did not seek any physician review as to Criep's conduct.

15. After the suit was filed, using the services of the rehabilitation nurse under contract to Sentry, attorney Shyrock arranged for John Leger, a Houston lawyer with whom he had previously practiced, to represent the Palacios family. Shyrock referred to Leger as his "local counsel". Shyrock relied on Leger to appear at hearings, prepare appropriate papers, and otherwise protect Sentry's interests. Moreover, Sentry completely funded the out-of-pocket expenses of the litigation, to include three $7,500 bonds. Thus, Leger acted in a common enterprise with Sentry and Shyrock.

16. Sentry not only instituted the suit against Criep without investigation and without probable cause, but it also used two affirmative misrepresentations to continue to prosecute the suit against Criep. The first was that attorney Leger filed an affidavit in the state court case based on false information given to him by Sentry. In this affidavit Leger claimed that "plaintiff's counsel" was in possession of a written report from a competent health care professional which established Criep's negligence, and proximate cause. There was no such report. In this case, Leger testified that the information on which the affidavit was based had been provided to him by Shyrock. Although Shyrock disputes this accusation, he admits that he received the false affidavit and forwarded it to Sentry.

17. Neither Sentry nor Shyrock did anything to counter or otherwise correct the mis-impression created by the affidavit. To the contrary, when the state judge ordered cost bonds because of the inadequacy or incorrectness of the affidavit, Sentry posted three $7,500 bonds, one of which was ultimately ordered to be forfeited because of bad faith (although the issue is still on appeal). The bonds which were filed were prepared by Leger and approved by Sentry. They show John Leger acting in a capacity as attorney for Sentry Insurance company. Thus, Sentry ratified and endorsed Leger's misconduct and will be held fully accountable for its actions in so doing. The Court finds itself in agreement with Dr. Criep. The suit against him

should never have been filed in the first place, but, certainly, Sentry could and should have stopped the prosecution at several points throughout the process.

18. In addition to the above-cited abuse, the attorneys representing the Sentry and Palacios "plaintiffs" misrepresented to the state court judge the volume of records which its expert would have to review in order to give liability opinions against Criep and the other defendants.

19. By means of these improper tactics, Sentry and Leger continued to prosecute the case against Criep until March of 1997 when Dr. Bontke, plaintiff's expert, was deposed. Throughout this period, both Shyrock and Leger conducted "negotiations" with attorney Cathy Mezick who represented Dr. Criep in the *Palacios* case. They never once made a monetary demand or otherwise negotiated for money.

20. Rather, they offered to non-suit Criep in exchange for testimony favorable to Sentry against his co-defendants. Even when attorney Mezick informed them that Criep did not believe that these co-defendants had done anything wrong, they persisted in making these negotiation demands.

21. Although Sentry disputes the extent of the "negotiations" regarding testimony in exchange for a release/non-suit, both Shyrock and Leger corroborate the testimony of Criep's defense counsel to the effect that they attempted, as a precondition to the dismissal of Criep from the lawsuit, to either (a) get Criep to testify against his co-defendant, or (b) to withhold his testimony.

22. Because Sentry knew that there was no merit in the case against Criep, this use of the legal process is improper and inexcusable conduct for which Sentry is liable.

23. Ultimately, when it became abundantly clear that Criep was not going to agree to "cooperate" in any way, but, indeed, that his counsel was going to name expert witnesses who would be available to the other defendants, and knowing that the deadline for naming experts had passed and that Sentry and its counsel could not marshall any evidence against Criep, the suit was dismissed. Leger prepared the non-suit for both plaintiffs.

24. After Criep was dismissed from the lawsuit, he experienced emotional problems.

25. At the request of his counsel, Criep was evaluated by a psychiatrist, Priscilla Ray, M.D. Dr. Ray diagnosed Criep with an adjustment disorder with stress of a chronic nature as defined in the DSM–IV. Dr. Ray testified that Criep experienced emotional trauma because of his perception that he was under attack from "friendly fire," *i.e.* the insurance company. Dr. Ray testified that as result of the lawsuit (the "stressor") Dr. Criep experienced impairment in his operating functions, which manifested itself in dread and isolation.

26. Sentry offered the expert testimony of psychiatrist David Axelrad, M.D. Dr. Axelrad and his psychologist colleague Nell Schwartz, Ph.D. conducted psychological testing of Criep. Dr. Axelrad testified that he does not believe that Criep's level of functionality has been impaired to a sufficient clinical degree to warrant a diagnosis of a DSM–IV psychiatric condition. In other respects he concurred in the opinion of Dr. Ray that Dr. Criep experienced anger, frustration, and emotional distress that was caused by the *Palacios* suit and impacted his decision to leave the practice of medicine.

27. The Court need not make any findings on the conflicting opinion evidence of whether Dr. Criep has a diagnosable condition pursuant to the DSM–IV. Rather, the Court finds the expert testimony of both experts to be highly credible. Both experts concurred that Criep had a significant emotional reaction to the *Palacios* suit and this Court finds that the filing and prosecution of the *Palacios* suit by Sentry caused Criep to have a severe emotional reaction.

28. Any conclusion of law that should be construed as a finding of fact is hereby adopted as such.

### Conclusions of Law

1. Criep has admitted that he is unable to prove his claim of malicious prosecution at trial. Thus, the Court determines that Criep's claim for malicious prosecution is dismissed.

2. Criep has asserted an abuse of process cause of action against Sentry. There are three elements to this tort: an illegal, improper, or perverted use of legal process; the perverted process is used for an ulterior and improper motive; and damages that are proximately caused by the perverted process. *J.C. Penney Co. v. Gilford*, 422 S.W.2d 25, 31 (Tex.Civ.App. 1967), writ ref'd n.r.e. The Court determines that each of these elements was proved by Criep at trial. Sentry's initial suit against Criep was clearly both improper and perverted. It filed the suit knowing that it had conducted no investigation whatsoever and believing that, at best, the claim against Criep was a "longshot possibility". More importantly, however, it continued to prosecute the suit without making any effort to marshall supporting evidence. And, even more importantly, it utilized clearly illegal, improper and perverted means of doing so, *e.g.* the filing of a false affidavit and the making of misrepresentations to the state court judge for the purpose of prolonging the litigation against Criep.

To prevail under this tort theory, in addition to showing a level of culpability, (*i.e.* improper, illegal or perverted use of the legal system), a plaintiff must also prove that the legal process was used for an "ulterior motive", *i.e.* to obtain a "collateral advantage" or benefit. Criep has proven this element because the evidence demonstrated that Sentry's goal was not to recover money from Dr. Criep, and, indeed, that it never made any demand or otherwise negotiated for money damages. Rather, it filed and prosecuted this case in a manner which was calculated to pressure him to the point that, regardless of what he believed to be the truth, he would give testimony against his co-defendants simply to buy his peace and be dismissed from the case. Sentry's actions were the proximate cause of the damages to Criep as discussed further *infra*.

3. Criep has asserted a cause of action for tortious interference. To prevail on a claim of tortious interference with business relations under Texas law, a plaintiff must prove: (a) the existence or a prospect of a contract; (b) an intentional and willful act interfering with the contract that was calculated to cause damage to the plaintiff; and (c) damages. *Kiepfer v. Beller*, 944 F.2d 1213, 1220 (5th Cir.1991). The Court determines that Criep did not prove at trial that there was a contract or a prospect of a contract in which the defendants interfered. Accordingly, Criep cannot prevail on this theory of recovery.

4. Criep has asserted a cause of action for intentional infliction of emotional distress. The elements of this claim are: the defendant acted intentionally or recklessly; the conduct was extreme and outrageous; the actions of the defendant cause the plaintiff emotional distress; and the emotional distress suffered by the plaintiff was severe. *Twyman v. Twyman*, 855 S.W.2d 619, 620 (Tex.1993). The Court finds that Sentry's conduct meets this standard. It knowingly sued Criep for the express purpose of harming him to the point that he would provide testimony to assist their case against the other physicians and the hospital. Moreover, Sentry knew that the case against Criep was meritless as evidenced by their characterization of the case against him as "a longshot." The Court further determines that the emotional distress which this conduct caused Criep to suffer was severe.

5. Based on Criep's testimony, supported by the testimony of Dr. Ray, the Court determines that Criep has sufficiently satisfied the elements of his claim for intentional infliction of emotional distress.

6. The tort of intentional infliction of emotional distress "is not available as an independent cause of action unless the actor intends to cause severe emotional distress or severe emotional distress is the primary risk created by the actor's reckless conduct." *Standard Fruit & Vegetable Co., Inc. v. Johnson*, 985 S.W.2d 62, 66 (Tex.1998).

7. Notwithstanding that Criep has proved his claim for abuse of process, the Court also determines that Criep has established that Sentry intended to cause severe emotional distress to Criep by naming him as a defendant in the *Palacios* lawsuit.

8. Criep argues that he because he has decided to leave the practice of medicine as a result of the *Palacios* lawsuit that he is entitled to recover between $3,555,288 and $8,884,515. The Court determines that Criep has not established his entitlement to recovery of damages. Accordingly, the Court declines to award the requested damages for Criep's relinquishment of the practice of medicine.

9. The Court determines that Criep is entitled to recovery of damages in the amount of $25,000 for his emotional distress and for Sentry's abuse of process in filing the *Palacios* lawsuit.

10. Criep's malpractice insurance carrier, Texas Medical Liability Trust, paid reasonable and necessary attorney's fees and expenses in the amount of $18,280.50 to defend him in the *Palacios* lawsuit and has intervened to recover these costs. The Court determines that $18,280.50 of the $25,000 award be awarded to the Intervenor.

11. Criep has requested the imposition of exemplary damages. Pursuant to § 41.004(b), exemplary damages may be awarded if the plaintiff established malice. Tex. Civ. & Practices Rem.Code Ann § 41.004(b). The Court determines that Criep has established that Sentry acted with malice by naming him as a defendant in a lawsuit it knew had no merit merely to coerce Criep into negotiating with it to testify against his co-defendants. The Court determines that exemplary damages in the amount of $100,000 should be assessed against Sentry. The imposition of these damages are appropriate in this case given Sentry's egregious conduct in naming Criep in the *Palacios* lawsuit. Sentry's conduct constitutes a totally unacceptable and deplorable practice which is totally contrary to the administration of the civil justice system.

12. Any finding of fact that should be construed as a conclusion of law is hereby adopted as such.

### Conclusion

On the basis of the foregoing Findings of Fact and Conclusions of Law, judgment will be entered for Plaintiff Leo Criep and against Defendant Sentry Insurance company for $25,000 in total actual damages, with prejudgment interest of 10% simple interest from August 7, 1997 until the date before final judgment is entered in this matter, plus costs of court. Of this $25,000 in damages, Intervenor the Texas Medical Liability Trust is entitled to recovery of $18,280.50. Thus, after the Intervenor is paid, Criep shall recover actual damages in the amount of $6,719.50, plus prejudgment and post-judgment interest. Furthermore, Criep shall recover exemplary damages against Sentry in the amount of $100,000. Postjudgment interest shall accrue at the rate of 4.732%.

### FINAL JUDGMENT

As the Court has entered findings of fact and conclusions of law in favor of the plaintiff Leo Criep and in favor of intervenor the Texas Medical Liability Trust and against the defendant Sentry Insurance, the Court hereby

ORDERS that judgment be entered in favor of Leo Criep and the Texas Medical Liability Trust as follows:

Judgment is entered for Plaintiff Leo Criep and against Defendant Sentry Insurance company for $25,000 in total actual damages, with prejudgment interest of

10% simple interest from August 7, 1997 until the date before final judgment is entered in this matter, plus costs of court. Of the $25,000 in actual damages, Intervenor the Texas Medical Liability Trust shall recover $18,280.50 to be paid directly to the Intervenor by Sentry, with the balance of $6719.50 to be paid directly to Criep, plus pre-judgment and post-judgment interest. Additionally, judgment is entered for Criep and against Sentry Insurance as exemplary damages in the amount of $100,000. Post-judgment interest shall accrue at the rate of 4.732%.

THIS IS A FINAL JUDGMENT.