Mrs. Patricia Ann PENDLETON, Individually, etc., Appellant,

v.

A. H. BURKHALTER et al., Appellees.

No. 15230.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

May 16, 1968.

On Rehearing Sept. 5, 1968.

Rehearing Denied Oct. 24, 1968.

Kelley, Ryan & Merrill, William J. Merrill, Houston, for appellant.

Reynolds, White, Allen & Cook; Joe H. Reynolds; Stanley B. Binion, Houston, for appellees.

PEDEN, Justice.

This appeal is from a judgment in favor of defendants as to a claim for damages for malicious prosecution, false imprisonment and for denial of personal rights and property interests. No appeal has been taken from that part of the judgment by which certain corporate ownership rights were determined.

Doctors Pendleton and Burkhalter and a Dr. Mathis joined together in 1960 to form three corporations which built Red Bluff General Hospital and Clinic at Pasadena, Texas. Dr. Mathis later sold his interest; there have been several other transactions involving stock in the corporation, but Drs. Pendleton and Burkhalter remained the principal stockholders. The hospital and pharmacy were completed in 1961 and were successfully operated for several years, but numerous disputes arose, and on September 20, 1966, at joint special meetings of the stockholders of the three corporations, Drs. Pendleton and Burkhalter each sought to oust the other from the board of directors of the companies. Later that day the medical staff at the hospital withdrew from Dr. Pendleton his privilege of practicing medicine there; ten days later he obtained a court order temporarily restraining several of the defendants from interfering with his access to and use of the hospital. Later that same day defendant Dunham, while employed as executive secretary to the medical staff of the hospital, filed a sworn lunacy complaint against Dr. Pendleton, who was detained for about three hours, given a mental examination and released.

After a hearing on October 4, 1966, Honorable John Snell, Jr., held defendant Dunham in contempt of court for interfering with Dr. Pendleton's use of the hospital by causing him to be arrested on the lunacy complaint; Judge Snell also replaced the temporary restraining order with a temporary injunction. Defendants, Dr. Burkhalter, Dr. Roache and Dr. Causey, who were members of the medical staff at the hospital, then withdrew their patients from it. Defendant Mills, the head nurse, was also held to be in contempt of court for a later incident involving interference with Dr. Pendleton's use of the hospital.

On December 9, 1966, Dr. Pendleton was shot to death outside the hospital. No evidence was offered in the trial of this case to show any connection between his death and any of the events or persons complained of in this cause, if any there was. When this cause was tried no charges had been filed against anyone in the death of Dr. Pendleton.

Mrs. Pendleton, suing individually, as administratrix of the Estate of her deceased husband and as next friend of their two minor children, alleged in her petition that the defendants had damaged her husband by willfully interfering with his medical practice and with his use of the hospital and by causing a false complaint of lunacy to be filed against him.

After a full non-jury trial, a judgment was signed in favor of defendants on all of the claims for damages. Extensive findings of fact and conclusions of law were filed in response to appellant's request. We will try to omit those details of the parties' disputes and difficulties which are not essential to the outcome of this appeal.

Appellant's first four points of error are:

1. The trial court's conclusions of law are erroneous in denying Plaintiff a re-

covery because the undisputed proof showed all the elements of malicious prosecution on the part of Defendants with resultant damage to Plaintiff.

2. The trial court's conclusions of law are erroneous in denying Plaintiff a recovery because the great weight and preponderance of all the evidence showed all of the elements of malicious prosecution on the part of Defendants and also showed that Plaintiff suffered damages as a direct and natural consequence thereof.

3. The trial court's findings that Defendants acted without malice and with probable cause in filing the sworn lunacy complaint against R. E. Pendleton, Jr., deceased, are without any support in the evidence.

4. The trial court's findings that Defendants acted without malice and with probable cause in filing the sworn lunacy complaint against R. E. Pendleton, Jr., deceased, are so against the great weight and preponderance of all the evidence as to be clearly wrong and unjust.

As stated in J. C. Penney Co. v. Gilford, 422 S.W.2d 25 (1st Houston Civ.App.1967, writ ref., n. r. e.):

"To maintain an action for malicious prosecution it must be proved that there was a prosecution by the defendant, that it was malicious, that it was without probable cause, and that the prosecution has ended in an acquittal. Probable cause has been defined as the existence of such facts and circumstances as would excite the belief, in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted. Malice may be inferred from circumstances if they are such as to satisfy the mind that the party was actuated by wrongful motives in the institution and continuance of the prosecution. The wrongful motive, coupled with a wrongful act wilfully done to the injury of another, constitutes legal malice."

In our case there was a prosecution and it ended in an acquittal, so the disputed elements are those of malice and probable cause. As pointed out by the Texas Supreme Court in the 1883 case of Raleigh & Heidenheimer Bros. v. Cook, 60 Tex. 438:

"It is not so much the intermediate action of the courts upon the charge, when there is a final decision of it in favor of the accused, as the motives, grounds, facts and evidence upon which the prosecutor proceeded in making it, that determines the two principal questions of malice and want of probable cause in a suit for malicious prosecution."

■ Why did defendant Dunham file the lunacy complaint? He gave no direct testimony as to the "motives, grounds, facts and evidence upon which he proceeded in making the charge," and there is a dearth of evidence in the record on this point. He worked at the hospital for only about three weeks, and, as we have noted, his title was executive secretary for the medical staff of the hospital when he filed the lunacy complaint. He testified that his duty was to carry out the policies of the medical staff, and he remembered few of them except those connected with keeping Dr. Pendleton and his patients away from the hospital; the trial judge made a finding that Dunham filed the complaint while acting in his capacity of executive assistant to the medical staff. Some of the most direct evidence we have as to whether Dunham's act of filing it was done on his own initiative is found in the testimony of defendant, Dr. Sheldon, who was a psychiatrist on the staff of the hospital. He testified that Dr. Burkhalter had told him (Sheldon) that he (Burkhalter) had the lunacy complaint sworn out on the advice of the County Judge. Further, that Dr. Burkhalter told him this before Dr. Pendleton had been taken to the county hospital for examination. Defendant Burkhalter had testified earlier, he was not asked

about this and he was not called back to the witness stand, so the testimony on this point remains uncontroverted. Appellees assert it is hearsay, but we hold that it constitutes an admission. McCormick and Ray, Texas Law of Evidence, § 1121 (1956), and cases cited.

If we consider Dr. Burkhalter in the role of the prosecutor of the lunacy charge, what does the record show with respect to his motives, grounds, facts and the evidence upon which he proceeded in making the charge? Although it is clear in the evidence that Dr. Burkhalter wanted Dr. Pendleton out of the hospital, few tasks are more difficult than that of accurately discerning the motives of another, and the trial judge is obviously in a better position to do it than is an appellate court.

We look to the evidence concerning the existence of such facts and circumstances as would excite the belief in a reasonable mind acting on the facts within the knowledge of Dr. Burkhalter, that Dr. Pendleton was mentally ill and that for his own welfare and protection or the protection of others he required observation and treatment in a mental hospital. Several doctors testified they did not consider that Dr. Pendleton was of unsound mind, but defendant, Dr. Sheldon, a psychiatrist, testified that in about February, 1966, he had expressed to Dr. Burkhalter his opinion that Dr. Pendleton was of unsound mind, and that again in March or April of 1966 he told Dr. Burkhalter that he thought "Dr. Pendleton was again of unsound mind in the legal sense in that he should be committed."

Dr. Sheldon further testified that after the lunacy warrant had been served on Dr. Pendleton he (Sheldon) said he did not think Dr. Pendleton could be committed at that time. Dr. Burkhalter testified that at some time before September, 1966, Dr. Sheldon had told him he thought Dr. Pendleton was of unsound mind but had not suggested that Dr. Pendleton be committed. Further, Dr. Burkhalter testified that he thought some of Dr. Pendleton's actions were abnormal but has since decided he was not qualified to make a decision.

■■ The appellant had the burden of establishing that the prosecution was malicious, and public policy requires that the rules governing such actions be strictly adhered to. American Motors Finance Co. v. Cleckler, 28 S.W.2d 274 (Eastland Civ. App.1930, no writ).

We have carefully examined the complete record of this case, and have fully considered all of the evidence; that introduced by appellant was largely circumstantial in nature. Although it raised fact issues in support of Mrs. Pendleton's position as to each of her first four points, we cannot say there is insufficient evidence to support the trial court's findings to which they are directed, and we overrule all four of them.

We sustain appellant's fifth point. The trial court's finding that defendant Dunham acted independently of the other defendants in filing the lunacy complaint is against the great weight and preponderance of the evidence, for the reasons we have indicated.

■ We sustain appellant's sixth and seventh points of error which complain of the finding that Dr. Pendleton suffered no damages as a result of the lunacy proceeding. We hold that under the evidence in this case the practicing physician who had a lunacy complaint filed against him and who was detained for three hours while undergoing a mental examination did sustain damages. Roberts v. Brown, 43 Tex. Civ.App. 206, 94 S.W. 388 (Ft. Worth Civ. App., no writ); Gold v. Campbell, 54 Tex. Civ.App. 269, 117 S.W. 463 (San Antonio Civ.App. 1909, no writ).

■ Appellant's eighth and ninth points assert that the trial court erred in finding that the acts of defendants were not the proximate cause of, or causally connected with, any damage or injury to Dr. Pendle-

ton, because such findings are supported by no evidence, are contrary to a presumption of damages or are against the great weight and preponderance of the evidence. We hold that there is no evidence of any causal connection between the acts of several of the defendants and the damages suffered by Dr. Pendleton, but we sustain the ninth point on the basis that the great weight and preponderance of the evidence shows a causal connection between the acts of Dr. Burkhalter and actual damages to Dr. Pendleton.

Appellant's next two points are directed to her theory of false imprisonment. They assert that the undisputed proof showed that defendants had Dr. Pendleton falsely arrested and that there is no evidence to support the trial court's finding that the lunacy complaint and order were in conformity with law and were valid. We overrule these points. The petition under which appellant went to trial in this case alleges:

"In particular, Defendant Dunham, acting under the supervision and direction of and as an employee of Defendants Burkhalter, Sheldon, Roache and Causey, filed a sworn lunacy complaint which resulted in the issuance of an order by a Justice of the Peace in Harris County, Texas, committing the decedent to the mental ward of Jefferson Davis Hospital in Houston, Texas, for mental examination and treatment."

We find no allegation of false imprisonment. It is stated in American Motors Finance Co. v. Cleckler, supra:

"It will be noted that the petition alleged that appellee was arrested under the authority of a warrant issued by a magistrate, and that the complaint, which was made the basis of the warrant, charged appellee with a felony. These allegations, we think, clearly classify appellee's cause of action as one for malicious prosecution."

Points ten and eleven are overruled.

Appellant's next three points complain of the trial court's denial of damages for defendants' allegedly having denied Dr. Pendleton and his patients use of the hospital and its facilities, and assert that the court's findings that the defendants acted in good faith and not as conspirators are against the great weight and preponderance of the evidence. We overrule these points; we have read the entire record with a view to determining these points, and we cannot say that the findings are against the great weight and preponderance of the evidence.

Appellant's fifteenth point says the court erred in excluding certain offered evidence. We have considered the testimony and determined that the error, if any, was harmless.

The points of error which we have sustained do not require a reversal, because appellant has not established the defendants' liability. The judgment of the Trial Court is affirmed.

## On Motion for Rehearing

In response to the appellant's motion for rehearing, we have reconsidered our original opinion.

Appellant calls our attention to the trial court's additional finding of fact No. 23, which reads: "That Defendant Sheldon, prior to the issuance of said lunacy complaint by Defendant Dunham, had advised Defendant Burkhalter that the mental condition of R. E. Pendleton, Jr., was not such that he could be committed to a mental institution."

█ We are unable to find in the record an order showing that the trial judge affirmatively made such finding. However, the transcript contains an order which provides that requested additional findings 1, 2, 3, 7, 12, 24, 27 (and others) are denied. The order does not expressly say that any additional findings are made, but since all parties to this appeal have treated the matter as if those requested findings not spe-

cifically refused were made, we will so regard them.

The support in the evidence for such finding will not be discussed here, because no assignment or cross-assignment of error was made as to it. The finding is vital in our consideration of appellant's second and fourth points of error. In view of additional finding No. 23 and of Dr. Burkhalter's admission that it was he who had defendant Dunham swear out the lunacy complaint, we re-examine the evidence as to malice on his part and as to probable cause.

In his testimony regarding Dr. Pendleton's mental health, Dr. Burkhalter pointed out that Dr. Sheldon was a psychiatrist and twice observed that he (Burkhalter) was not. Some of his testimony concerning his discussion with Dr. Sheldon about Dr. Pendleton before the September 30 date of the filing of the lunacy complaint is noteworthy:

"Q  Did you as a physician and your qualifying training and education, have—not saying definitely in the sense of a psychiatrist, but as a medical practitioner, did you have an opinion?

"A  No, sir.

"Q  Never did have any opinion whether he was of sound or unsound mind?

"A  If I did I was confused.

"Q  You did have but you later found out you were wrong?

"A  I found out I was not qualified to make a decision.

"Q  What confused you?

"A  I am not a psychiatrist and some of the actions were abnormal in my opinion.

"Q  That was back when you had the discussion with Dr. Shelton?

"A  Yes, sir.

"Q  What was Dr. Shelton's opinion, if any?

"A  It is my understanding that Dr. Shelton thought there was something wrong with Dr. Pendleton.

"Q  Did he so state to you?

"A  Yes, sir.

"Q  He stated Dr. Pendleton was of unsound mind?

"A  Yes, sir.

"Q  In June or July?

"A  Sometime before the September meeting.

"Q  Of September the 20th?

"A  The board of directors—

"Q  September the 20th, 1966?

"A  Yes.

"Q  He had given you his opinion as a psychiatrist Dr. Pendleton was of unsound mind?

"A  Yes, sir.

"Q  Did he say he should be committed?

"A  No, sir.

"Q  Did he suggest commitment?

"A  No, sir.

"Q  If he was of unsound mind was there any explanation for that?

"A  You don't commit everybody you might think is of unsound mind."

We find no testimony by Dr. Burkhalter indicating that at the time (or just before) the lunacy complaint was filed he had been advised by anyone or that he personally held the opinion that Dr. Pendleton was "mentally ill and because of his mental illness * * * likely to cause injury to himself or others if not immediately restrained," the standard provided by Article 5547–27, Vernon's Ann.Civ.St., for determination of whether a lunacy war-

rant should be issued to restrain one who is mentally ill. Nor did he refer to any specific conduct on the part of Dr. Pendleton which might give rise to such an opinion or belief on his part.

There is evidence in the record that Dr. Burkhalter was angry at Dr. Pendleton; that he wanted Dr. Pendleton out of the hospital, that the doctors on the hospital staff other than Drs. Burkhalter and Sheldon did not consider Dr. Pendleton to have been of unsound mind; that on September 20 Dr. Burkhalter voted to remove Dr. Pendleton from the board of directors of the corporations and participated in the medical staff's suspension of Dr. Pendleton from the staff; that on September 21 Dr. Burkhalter gave Dr. Pendleton a notice of eviction from his offices in the hospital, and that Dr. Burkhalter had the lunacy complaint filed on the same day that a temporary restraining order was issued to prevent him and some of the other defendants from interfering with Dr. Pendleton's access to and use of the hospital, clinic and facilities.

We hold that the great weight and preponderance of the evidence indicates that Dr. Burkhalter lacked a proper motive in causing the lunacy complaint to be filed. His wrongful motive, coupled with such wrongful act, wilfully done to the injury of Dr. Pendleton, would constitute legal malice. We also hold that the evidence adduced showed a lack of probable cause on his part, i. e., the lack of such facts and circumstances as would excite the belief in a reasonable mind, acting on the facts within his knowledge, that at the time in question Dr. Pendleton's mental health was substantially impaired and because of this he was likely to injure himself or others if not immediately restrained. J. C. Penney Co. v. Gilford, 422 S.W.2d 25 (1st Houston Civ.App.1967, writ ref., n. r. e.); Suhre v. Kott, 193 S.W. 417 (San Antonio Civ.App.1917, no writ); Reed v. Lindley, 240 S.W. 348 (Ft. Worth Civ.App. 1922, no writ).

We sustain appellant's second and fourth points of error as to defendant Burkhalter. We overrule her first and third points. Our rulings as to appellant's points 5. through 9. remain unchanged.

Appellant has urged us to reconsider our rulings with respect to her tenth through fourteenth points. We will not do so because our rulings on rehearing as already indicated make it necessary for us to reverse this cause and remand it for a new trial.

The motion for rehearing is granted. The judgment is reversed and remanded.