Opinion issued August 30, 2012



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-10-00938-CV

————————————

**AIRGAS-SOUTHWEST, INC., Appellant**

**V.**

**IWS GAS AND SUPPLY OF TEXAS, LTD., Appellee**


**AND**


**ROBERT A. MORTON, JR., STEVEN P. LYNCH, RUBEN G. PENA, RHANDA CHILDERS, DENIS STERMER, KEVIN JAMES, THOMAS SMITH AND JOHN ROGSTAD, Appellants**
**V.**
**AIRGAS-SOUTHWEST, INC., Appellee**

On Appeal from the 164th District Court
Harris County, Texas
Trial Court Case No. 2008-42098

**O P I N I O N**

IWS Gas and Supply of Texas, Ltd. ("IWS") sought and obtained a money judgment against Airgas-Southwest, Inc. ("Airgas") for malicious prosecution. Robert A. Morton, Jr., Steven P. Lynch, Ruben G. Pena, Rhanda Childers, Dennis Stermer, Kevin James, Thomas Smith and John Rogstad, all of whom were employees of IWS (the "Individual Employees"), also sued Airgas for malicious prosecution, but the trial court rendered partial summary judgment dismissing those claims at an earlier stage of the litigation. Airgas appeals from the final judgment in favor of IWS. The Individual Employees also appeal from the summary-judgment dismissal of their malicious prosecution claims against Airgas.

We conclude that there was legally insufficient evidence that IWS suffered a special injury, which is an essential element of a claim for malicious prosecution. Accordingly, we reverse in part the judgment of the trial court and render a take-nothing judgment against IWS. For the same reason, we affirm the judgment to the extent it incorporated the summary-judgment dismissal of the Individual Employees' claims.

## Background

### I.    Airgas's acquisitions

Airgas is a distributor of gases and welding and safety supplies in Harris County and the surrounding area. In 2006, Airgas, Inc., the parent company of

Airgas, acquired one of its competitors, Aeriform Corporation. While this transaction was pending, another Airgas competitor, IWS Gas and Supply Corporation, recruited Aeriform's four-person Houston-based industrial sales force to join what would eventually become its subsidiary, IWS. Soon after Airgas's acquisition of Aeriform was announced, the four Aeriform industrial salesmen—Jerry Barton, Steven Lynch, Robert Morton, Jr., and Ruben Pena—resigned their jobs to work for the newly-formed IWS. Upon tendering his resignation, Barton showed his supervisor the offer letter from IWS, which offered a "considerable increase" in compensation above what Airgas paid him, plus the option to buy shares in IWS.

Shortly after the four Aeriform salesmen joined IWS, approximately 35 customers stopped ordering supplies from Aeriform. The volume of lost sales amounted to between $500,000 and $600,000 per month. Due to the sudden loss of customers, Airgas and Aeriform management suspected that IWS had solicited the customers by obtaining confidential information through the four former Aeriform salesmen. According to his former supervisor, Barton had approached Aeriform's record-keeper shortly before leaving the company and obtained copies of all his customer contracts, which reflected pricing and product information. Allegedly, neither Airgas nor Aeriform ever recovered the missing customer contracts.

3

While Airgas was acquiring Aeriform, Airgas was also in the process of acquiring Gulf Oxygen, LLC, another company in the gas and welding supply business. Before acquiring Gulf Oxygen, Airgas management heard rumors that employees would leave the company upon the acquisition. Around the time of the closing, several Gulf Oxygen employees—including Rhanda Childers, Kevin James, John Rogstad, Thomas Smith, and Dennis Stermer—quit to work for IWS. According to Gulf Oxygen's former owner, when Airgas personnel searched Gulf Oxygen's premises, they could not find any of the customer contracts.

## II. Litigation of Airgas's original claims

Airgas, as assignee of Aeriform Corporation, filed a petition in Harris County district court to take pre-suit depositions of the former Aeriform employees. Before the district court took action on the petition, the former Aeriform employees and IWS filed a separate lawsuit which was assigned to a different Harris County district court. Their petition requested a declaratory judgment that they did not misappropriate Aeriform's confidential information, they did not engage in unfair competition, they did not tortiously interfere with Airgas's current or prospective contracts, and no law or contract precluded them from contacting Airgas's employees or customers.

In response, Airgas filed an answer and counterclaim against Aeriform's former employees for breach of fiduciary duty, and the company filed additional

4

counterclaims against them and IWS for conspiracy to breach fiduciary duty and unfair competition. Airgas later amended its pleadings to allege those same claims against former Gulf Oxygen employees Childers, James, Rogstad, Smith, and Stermer, and it additionally alleged claims against the opposing parties for misappropriation of trade secrets.

Airgas obtained a temporary restraining order against IWS and all of its employees, specifically including the former employees of Aeriform and Gulf Oxygen. The TRO restrained and enjoined them from:

1. Contacting any Airgas employee or in any manner soliciting any Airgas employee for employment with IWS;

2. Entering into any new employment agreements and/or hiring any current Airgas employee whether solicited or not; and

3. Having any former Airgas employee now with IWS (including any former Aeriform or Gulf Oxygen LLC (or affiliate) or employee) contact any customers they had while at Airgas, Aeriform or Gulf Oxygen LLC that are not currently customers of IWS.

A hearing was scheduled for 13 days after the TRO was signed to determine whether it should be made into a temporary injunction pending full trial on the merits, and the TRO stated that it would expire 14 days after it was signed. At the TRO hearing, Airgas announced that it had decided not to pursue a preliminary injunction, and that it would instead proceed to trial on an expedited basis. Airgas did not again request or obtain a restraining order or injunction against any party during the course of the underlying litigation.

Airgas amended its pleadings to assert an additional action under the Texas Theft Liability Act against all the adverse parties. On a motion for summary judgment, the trial court ordered that Airgas take nothing on that claim, but the remaining claims were allowed to proceed to trial by jury. Airgas nonsuited without prejudice its claims against all the Individual Employees except for Barton, thus leaving IWS and Barton as the sole adverse parties at trial.

At trial, after Airgas rested, the trial court directed a verdict in favor of IWS and Barton on the remaining claims, and in the final judgment it ordered that Airgas take nothing. The judgment additionally ordered that IWS and Barton should recover $336,269 in attorney's fees incurred during the period in which Airgas's claim under the Texas Theft Liability Act was pending, and that the nonsuit of Airgas's claims against the Individual Employees should be with prejudice.

III. **Malicious prosecution claims**

After the close of the litigation of Airgas's claims, IWS and the Individual Employees (excluding Barton) filed suit against Airgas and its president, Brent Sparks, asserting a claim of malicious prosecution which was stated as follows:

18. Defendants instituted a claim against Plaintiffs in the Lawsuit for: (i) misappropriation of trade secrets and confidential information, (ii) violations of the Texas Theft Liability Act, (iii) breach of fiduciary duty, (iv) unfair competition and (v) conspiracy. Defendants also sought, and obtained, injunctive relief against Plaintiffs.

6

19.   Defendants acted with malice in asserting these claims and seeking injunctive relief.

20.   Defendants lacked probable cause for these claims and the injunctive relief.

21.   Defendants['] claims against each Plaintiff for violation of the Texas Theft Liability Act terminated in Plaintiffs['] favor when the Court entered a take nothing judgment in favor of each Plaintiff.

22.   All remaining claims against Plaintiff IWS terminated in IWS' favor upon directed verdict of the Court, as reflected in the Final Judgment.

23.   Defendant Airgas's voluntary dismissal with prejudice of all remaining claims against all other Plaintiffs, as reflected in the Final Judgment, was a termination in Plaintiffs' favor.

24.   As a result of Defendants['] conduct described herein, Plaintiffs suffered actual and consequential damages within the jurisdictional limits of this Court including, but not limited to: (i) legal fees and costs, (ii) lost profits, (iii) lost income, (iv) lost business opportunities and (v) mental anguish.

On Airgas and Sparks's motion for partial summary judgment, the trial court dismissed the Individual Employees' claims for malicious prosecution, but it allowed IWS to proceed with its malicious prosecution claim. At trial, the court directed a verdict in Airgas's favor on a separate claim for tortious interference with prospective business relationships that IWS and the Individual Employees had

7

asserted in an amended petition. However, the court denied Airgas's request for a directed verdict on IWS's malicious prosecution claim.

At trial, Rogstad, who became president of IWS after quitting Airgas, testified that the TRO in the underlying litigation prevented the salespeople from fulfilling their jobs because "they were scared that if they went out and tried to get a customer that it could hurt them in the lawsuit itself," and that he himself ignored phone calls from customers with whom he had dealt in the past. He further testified that customers refrained from doing business with IWS because of the ongoing litigation, and that some customers did not want to be involved with IWS after having their records subpoenaed by Airgas. A former Aeriform customer and a former Gulf Oxygen customer each testified that they wanted to switch their business to IWS after their preferred salesmen moved there, but they decided not to do so in order to avoid involving themselves in a lawsuit.

The jury rendered a special verdict on IWS's claim against Airgas for malicious prosecution. The jury answered "yes" to the question of whether Airgas maliciously prosecuted IWS in the underlying litigation. In response to the question of what sum of money would fairly and reasonably compensate IWS for its damages in defending the underlying litigation, from the commencement of Airgas's counterclaim through entry of a final judgment, the jury answered $140,000 for attorney's fees and $224,482.72 for litigation costs and expenses.

The jury was not asked whether IWS was entitled to other damages, except for exemplary damages which the jury did not award.

In its final judgment, the trial court entered a money judgment against Airgas in favor of IWS, ordered that IWS take nothing against Sparks, and ordered that the Individual Employees take nothing against Airgas and Sparks. Airgas and the Individual Employees timely filed notices of appeal.

**Analysis**

### I. Airgas's appeal

Airgas raises six issues on appeal: (1) legal and factual sufficiency of the evidence that IWS suffered a "special injury," which is an element of malicious prosecution; (2) legal and factual sufficiency of the evidence to support other elements of IWS's malicious prosecution claim; (3) admission of evidence concerning events that occurred after Airgas had sought the TRO in the original litigation; (4) refusal to give certain jury instructions; (5) the award of attorney's fees as IWS's sole measure or damages (or, alternatively, failure to limit the measure of attorney's fees to only those incurred during the period the TRO was in effect); and (6) collateral estoppel with respect to IWS's claim for the attorney's fees that it incurred in the underlying litigation.

We focus on Airgas's first issue, which is dispositive of its appeal. Airgas argues that there was legally and factually insufficient evidence to support a

9

finding that IWS had suffered "special injury," which is an essential element of malicious prosecution. Airgas contends that the attorney's fees and litigation costs, which are the only damages that IWS sought and recovered, do not constitute special injury for the purpose of a malicious prosecution claim. Airgas further argues that the TRO obtained by Airgas in the underlying litigation does not satisfy the special injury requirement of a malicious prosecution claim which, according to Airgas, requires the physical detention of a person or physical seizure of property.

IWS argues that the TRO in the underlying litigation constituted an "injunction" that interfered with its person and property, thereby satisfying the special injury requirement as a matter of law. IWS contends that the law of Texas concerning malicious prosecution is consistent with that of other jurisdictions, and it relies upon cases from various other jurisdictions which purportedly demonstrate that the TRO at issue produced a special injury.

## A. Standard of review

In a legal sufficiency, or no-evidence, review, we determine whether the evidence would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We will sustain a no-evidence point when:

> (a) there is a complete absence of evidence of a vital fact, (b) the court
> is barred by rules of law or of evidence from giving weight to the only

10

evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.

*Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). In making this determination, we credit favorable evidence if a reasonable fact-finder could, and we disregard contrary evidence unless a reasonable fact-finder could not. *City of Keller*, 168 S.W.3d at 827.

In reviewing a factual sufficiency complaint, we must first examine all of the evidence. *Lofton v. Tex. Brine Corp.*, 720 S.W.2d 804, 805 (Tex. 1986). After considering and weighing all the evidence, we set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

## B. Special injury requirement

The Supreme Court of Texas observed over 150 years ago, "Every one is liable to be harassed and injured in his property and feelings by unfounded suits to recover of him property which is his own, but this is not an injury for which he can have legal redress." *Haldeman v. Chambers*, 19 Tex. 1, 53 (1857). Although there is no general cause of action for being subjected to an unsuccessful lawsuit, Texas recognizes the tort of malicious prosecution. *See Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996). "To prevail in a suit alleging malicious

11

prosecution of a civil claim, the plaintiff must establish: (1) the institution or continuation of civil proceedings against the plaintiff; (2) by or at the insistence of the defendant; (3) malice in the commencement of the proceeding; (4) lack of probable cause for the proceeding; (5) termination of the proceeding in plaintiff's favor; and (6) special damages." *Id.*; *cf. Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 792 n.3 (Tex. 2006) (listing similar elements for claim of malicious criminal prosecution). The sixth element of "special damages" has also been called "special injury." *See, e.g.*, *Ross v. Arkwright Mut. Ins. Co.*, 892 S.W.2d 119, 128 (Tex. App.—Houston [14th Dist.] 1994, no writ). The required damages or injury are termed "special" to distinguish them from the "ordinary losses incident to defending a civil suit, such as inconvenience, embarrassment, discovery costs, and attorney's fees." *See Tex. Beef*, 921 S.W.2d at 208.[1]

"The rule is firmly established in Texas which denies an award of damages for the prosecution of civil suits, with malice and without probable cause, unless the party sued suffers some interference, by reason of the suit, with his person or property." *Butler v. Morgan*, 590 S.W.2d 543, 545 (Tex. Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.) (citing *Pye v. Cardwell*, 222 S.W. 153 (Tex. 1920)).

---

[1]    The term "special damages" has different meanings in the contexts of other torts. *See, e.g.*, *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 767 (Tex. 1987) (business disparagement); *Williams v. Jennings*, 755 S.W.2d 874, 884 (Tex. App.—Houston [14th Dist.] 1988, writ denied) (slander of title).

12

Thus, Texas law requires "actual interference with the defendant's person (such as an arrest or detention) or property (such as an attachment, an appointment of receiver, a writ of replevin or an injunction)" in order to meet the special injury requirement. *Sharif-Munir-Davidson Dev. Corp. v. Bell*, 788 S.W.2d 427, 430 (Tex. App.—Dallas 1990, writ denied) (holding that recording a notice of lis pendens did not constitute the required "actual seizure" of property necessary to constitute special injury). When the alleged interference pertains to a person, appellate courts have affirmed judgments for malicious prosecution when the claimant was physically detained, even if the detention lasted a relatively short time. *See, e.g.*, *Pendleton v. Burkhalter*, 432 S.W.2d 724, 728 (Tex. Civ. App.—Houston [1st Dist.] 1968, writ ref'd n.r.e.); *Lindsay v. Woods*, 27 S.W.2d 263, 268 (Tex. Civ. App.—Amarillo 1930, no writ). When the alleged interference pertains to property, actual seizure similarly meets the standard. *See, e.g.*, *Pye*, 222 S.W. at 153–54; *Bell*, 788 S.W.2d at 430. In short, the kind of interference with person or property required to meet the special injury requirement is "physical interference." *See Tex. Beef*, 921 S.W.2d at 209.

Ordinary interferences with persons and property that any party suffers incident to a civil suit are not of the type that supports an action for malicious prosecution. *See Tex. Beef*, 921 S.W.2d at 208–09; *Butler*, 590 S.W.2d at 545; *Blanton v. Morgan*, 681 S.W.2d 876, 878 (Tex. App.—El Paso 1984, writ ref'd

13

n.r.e.). For instance, neither a deposition nor subpoena duces tecum constitute "the type of 'detention' or 'seizure' contemplated by the Texas courts" to meet the special injury requirement. *Ross*, 892 S.W.2d at 130.

Moreover, Texas courts of appeals have consistently declined to hold that the special injury requirement may be satisfied by consequential damages resulting from the underlying suit, such as attorney's fees and litigation costs,[2] loss of professional or personal reputation,[3] humiliation,[4] mental anguish,[5] loss of business and contracts,[6] pecuniary and economic losses,[7] diversion of time and attention to

---

[2]    *See Toranto v. Wall*, 891 S.W.2d 3, 5 (Tex. App.—Texarkana 1994, no writ); *Ross v. Arkwright Mut. Ins. Co.*, 892 S.W.2d 119, 128 (Tex. App.— Houston [14th Dist.] 1994, no writ); *Martin v. Trevino*, 578 S.W.2d 763, 766 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.).

[3]    *See Butler v. Morgan*, 590 S.W.2d 543, 544–45 (Tex. Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.); *Finlan v. Dallas Indep. Sch. Dist.*, 90 S.W.3d 395, 406 (Tex. App.—Eastland 2002, pet. denied); *Martin*, 578 S.W.2d at 766.

[4]    *See Butler*, 590 S.W.2d at 544–45; *Haygood v. Chandler*, No. 12-02-00239, 2003 WL 22480560, at *5 (Tex. App.—Tyler Oct. 31, 2003, pet. denied) (mem. op.).

[5]    *See Butler*, 590 S.W.2d at 544–45; *Haygood*, 2003 WL 22480560, at *5; *Toranto*, 891 S.W.2d at 5.

[6]    *See Butler*, 590 S.W.2d at 544–45; *Haygood*, 2003 WL 22480560, at *5; *Ross*, 892 S.W.2d at 128.

[7]    *See Finlan*, 90 S.W.3d at 406; *Ross*, 892 S.W.2d at 128.

14

defending against the suit,[8] increased insurance premiums,[9] and loss of ability to obtain credit.[10] "But once the special injury hurdle has been cleared, that injury serves as a threshold for recovery of the full range of damages incurred as a result of the malicious litigation." *Tex. Beef*, 921 S.W.2d at 209.

The outcome of Airgas's legal and factual sufficiency challenge thus turns on whether there was evidence to establish that IWS suffered a "special injury" or "special damages" in the underlying litigation. In *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203 (Tex. 1996), the Supreme Court of Texas stated that to satisfy the special injury requirement, "[t]here must be some physical interference with a party's person or property in the form of an arrest, attachment, injunction, or sequestration." *Tex. Beef*, 921 S.W.2d at 209 (citing *Bell*, 788 S.W.2d at 430).[11]

---

[8] *See Butler*, 590 S.W.2d at 544–45; *Toranto*, 891 S.W.2d at 5; *Ross*, 892 S.W.2d at 128.

[9] *See Butler*, 590 S.W.2d at 544–45; *Haygood*, 2003 WL 22480560, at *5; *Moiel v. Sandlin*, 571 S.W.2d 567, 571 (Tex. Civ. App.—Corpus Christi 1978, no writ).

[10] *See Finlan*, 90 S.W.3d at 406.

[11] The formulation of the special injury requirement in *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203 (Tex. 1996), appears to be ultimately traceable to three Texas authorities: *Pyre v. Cardwell*, 222 S.W. 153, 153 (Tex. 1920) ("The rule is firmly established in Texas which denies an award of damages for the prosecution of civil suits, with malice and without probable cause, unless the party sued suffers some interference, by reason of the suits, with his person or property."); *St. Cyr v. St. Cyr*, 767 S.W.2d 258, 259 (Tex. App.—Beaumont 1989, writ denied) (stating that special injury "means

15

IWS relies on the foregoing statement in *Texas Beef* to argue that the TRO in the underlying litigation constituted a special injury for which it was entitled to recover attorney's fees and other legal expenses and costs. The TRO enjoined IWS and its employees from contacting or hiring Airgas employees, and from contacting any customers that the Individual Employees had while working for their former employers that were not already customers of IWS. Thus, IWS argues, the TRO constituted an "injunction" that physically interfered with its person and property, which is all that *Texas Beef* requires to clear the "special injury hurdle" that allows recovery for its other damages, such as attorney's fees.

If we adopted IWS's understanding of *Texas Beef*, virtually any person whose person or property is subject to a restraining order or similar injunction has thereby suffered a special injury, since almost any injunction or restraining order interferes with the defendant's freedom of action or with his free use of his property, or both. *See Qwest Commc'ns Corp. v. AT&T Corp.*, 24 S.W.3d 334, 336 (Tex. 2000) ("One function of injunctive relief is to restrain motion and to

'actual physical detention of a person or seizure of his property'" (quoting *Rodriguez v. Carroll*, 510 F. Supp. 547, 553 (S.D. Tex. 1981)); and *Moiel v. Sandlin*, 571 S.W.2d 567, 570 (Tex. Civ. App.—Corpus Christi 1978, no writ) ("Texas and other jurisdictions adhering to the special injury requirement in malicious prosecution actions have required actual interference with the defendant's person (such as an arrest or detention) or property (such as an attachment, an appointment of a receiver, a writ of replevin or an injunction).").

16

enforce inaction."); DAN B. DOBBS, THE LAW OF TORTS 417 § 593 (2d ed. 2011) ("Provisional remedies almost always impose constraints on persons or property before trial on the merits."); *cf. Ross*, 892 S.W.2d at 130 ("If we were to hold that [a deposition or subpoena duces tecum] constituted detention or seizure for the purposes of a malicious prosecution action, then almost every suit filed would meet the damage element of the cause of action."). However, a closer review of Texas jurisprudence concerning the special injury requirement does not support IWS's expansive reading.

As Texas courts have long held, the special injury giving rise to a malicious prosecution claim must be interference with a person or his property. *See, e.g.*, *Tex. Beef*, 921 S.W.2d at 209; *Pye*, 222 S.W. at 153. In this case, the TRO interfered with IWS and its employees' persons, insofar it prohibited them from engaging in certain activities. The TRO did not directly affect their property, however, except to the extent that it might have deprived them of the opportunity to hire certain new employees or engage certain new business contacts. Such incidental effects on property do not constitute special injury. *See Butler*, 590 S.W.2d at 545; *cf. Tex. Beef*, 921 S.W.2d at 209 (discussing temporary injunction preventing collection of auction proceeds for sale of cattle and preventing sale of other cattle). Therefore, we only consider whether the TRO produced the type of interference with a person that qualifies as a special injury.

The special injury requirement has its origin in English common law. *See Masterson v. Brown*, 72 F. 136, 137–38 (5th Cir. 1896). In the ancient common law, a party could maintain an action for malicious prosecution of a civil suit without having to show a special injury. *See Woods v. Finnell*, 13 Bush 628, 632 (Ky. 1878). Later, in the thirteenth century, the Statute of Marlbridge permitted parties who successfully defended against certain kinds of actions to recover costs. *See Matterson*, 72 F. at 137–38; *Woods*, 13 Bush at 632. Because this and similar statutes were ordinarily thought to provide an adequate remedy for a wrongfully instituted suit, a successful defendant generally did not have a malicious prosecution claim upon termination of the suit in his favor. *Matterson*, 72 F. at 137–38; *Woods*, 13 Bush at 632. Nonetheless, suits for malicious prosecution were still recognized when the successful defendant in the underlying suit showed that he had sustained a special injury. *Matterson*, 72 F. at 138. "In all such cases the plaintiff [in the underlying suit] must have gone beyond the proper remedy for the enforcement of his claim, such as procuring an illegal order of arrest, or requiring excessive bail before the action could be maintained." *Woods*, 13 Bush at 632; *see also Smith v. Mich. Buggy Co.*, 51 N.E. 569, 571 (Ill. 1898) (observing that after Statute of Marlbridge, "it came to be held that an action for malicious prosecution would not lie in civil actions, unless in cases where there had been arrest of the person, or seizure of property, or other special injury").

18

American jurisdictions have split on whether a party must show a special injury in order to establish a claim for malicious prosecution. W. PAGE KEETON ET AL., PROSSER & KEETON ON TORTS § 120, at 889 (5th ed. 1984). The *Restatement (Second) of Torts* recognizes this split and provides two alternative descriptions of the tort: § 674 and § 677. Texas courts of appeals have recognized that § 674 of the *Restatement*, which omits the special injury requirement,[12] does not fully reflect the law of this state concerning malicious prosecution. *See McCall v. Tana Oil & Gas Corp.*, 82 S.W.3d 337, 350 n.7 (Tex. App.—Austin 2001) (observing that the special injury requirement of *Texas Beef* is not required by § 674), *rev'd on other grounds*, 104 S.W.3d 80 (Tex. 2003); *Toranto v. Wall*, 891 S.W.2d 3, 6 (Tex. App.—Texarkana 1994, no writ) (invoking special injury rule to implicitly reject appellant's request that the court adopt § 674). On the other hand, for "courts that have been unwilling to accept the broader rule stated in § 674," the *Restatement* provides in § 677 that one is subject to liability for malicious prosecution of civil proceedings that cause another "to be arrested or deprived of the possession of his

---

[12] *See* RESTATEMENT (SECOND) OF TORTS § 674 (1977) ("One who takes an active part in the initiation, continuation or procurement of civil proceedings against another is subject to liability to the other for wrongful civil proceedings if (a) he acts without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based, and (b) except when they are ex parte, the proceedings have terminated in favor of the person against whom they are brought.")

19

land or chattels or other things." RESTATEMENT (SECOND) OF TORTS § 677 & cmt. a (1977).

Texas has long been one of those jurisdictions unwilling to dispense with the special injury requirement, and its courts have consistently rebuked litigants' attempts to have that requirement altered or abrogated.[13] An early opinion of the Supreme Court of Texas reflects this state's adoption of the special injury requirement:

> To give a right to such redress, there must not only be a loss, but it must have been caused by the violation of some legal right. . . . Had the suit been for the wrongful suing out of the writ of sequestration or attachment, by which the defendant's property was seized and he sustained damage, the action might have been maintained.

*Smith v. Adams*, 27 Tex. 28, 29–30 (1863). In another case, the Supreme Court rejected the argument that a party could have an action for malicious prosecution arising out of "an ordinary civil suit, in which no extraordinary process was sued out." *Salado Coll. v. Davis*, 47 Tex. 131, 136 (1877). In yet another case, the

---

[13] *See Am. Bd. of Obstetrics & Gynecology, Inc. v. Yoonessi*, 286 S.W.3d 624, 628–29 (Tex. App.—Dallas 2009, pet. denied) (rejecting appellant's request that the special injury requirement be abandoned); *Ross*, 892 S.W.2d at 128 (observing Texas's adherence to the special injury requirement "for over one hundred years"); *Toranto*, 891 S.W.2d at 5 (declining to recognize new cause of action for malicious prosecution without special injury requirement); *Martin*, 578 S.W.2d at 766, 768 (rejecting argument that the special injury requirement is "outmoded in today's society" and opining that "the general policy reasons for adopting the special damage rule in Texas remain viable today").

20

Court alluded to the English common-law rationale for the special injury rule when it stated that:

> the ground on which an action for malicious prosecution of a civil action, where there is no arrest of the person or seizure of the property, or other like injury, is denied, is, that the imposition of costs, on the prosecutor of the unfounded action, is the relief which the law gives, and this is imposed in the cause without resort to another action.

*Johnson v. King & Davidson*, 64 Tex. 226, 230–31 (1885). Relying on the three foregoing precedents, the Supreme Court observed in the early part of the twentieth century, "The rule is firmly established in Texas which denies an award of damages for the prosecution of civil suits, with malice and without probable cause, unless the party sued suffers some interference, by reason of the suits, with his person or property." *Pye*, 222 S.W. at 153. The Court further echoed the English common-law rationale for the rule, which is that "the law makes the imposition of the costs the sole penalty for the wrongful prosecution of civil litigation." *Id.* at 153.

In *Texas Beef*, the Court recognized that other public policy considerations, besides the fact that a successful defendant is usually awarded costs in the underlying suit, underpin the special injury requirement:

> The special damage requirement assures good faith litigants access to the judicial system without fear of intimidation by a countersuit for malicious prosecution. The special damage requirement also prevents successful defendants in the initial proceeding from using their

21

favorable judgment as a reason to institute a new suit based on malicious prosecution, resulting in needless and endless vexatious lawsuits.

*Texas Beef*, 921 S.W.2d at 209 (quoting *Martin*, 578 S.W.2d at 768); *see also Salado Coll.*, 47 Tex. at 136 ("[I]t seems to be the policy of the law to content itself with meting out something less than our ideas of natural justice would demand, rather than to increase the risks attending and discouraging such a resort, and at the same time add to the difficulties and intricacies of ordinary litigation."). These same considerations have been discussed by other state supreme courts adhering to the special injury requirement.[14]

The common-law tort of malicious prosecution, when premised upon an interference with a person, historically required that the person seeking relief have been actually arrested.[15] Consistent with this historical limitation, Texas appellate

---

[14] *See, e.g.*, *Curiano v. Suozzi*, 469 N.E.2d 1324, 1328 (N.Y. 1984); *Abbott v. Thorne*, 76 P. 302, 303–05 (Wash. 1904); *Smith v. Mich. Buggy Co.*, 51 N.E. 569, 571–72; *Norcross v. Otis Bros. & Co.*, 25 A. 575, 576 (Pa. 1893), *abrogated by* 42 Pa.C.S.A. § 8351(b); *Pope v. Pollock*, 46 Ohio St. 367, 368–69 (1889); *see also* PROSSER & KEETON ON TORTS 889 § 120 (5th ed. 1989).

[15] *See Wood v. Sutor*, 8 S.W. 51, 52 (Tex. 1888) (holding that "one maliciously and without probable cause putting into operation the machinery of judicial proceedings, resulting in the arrest and trial of the accused, thereby incurs liability"); *Haldeman v. Chambers*, 19 Tex. 1, 53–54 (1857) (quoting treatises on cause of action for being arrested for lacking bail that had been wrongfully or excessively imposed in civil suit); *Baten v. Houston Oil Co. of Tex.*, 217 S.W. 394, 399 (Tex. Civ. App.—Beaumont 1919, no writ) ("An 'arrest' is an essential element of [malicious prosecution].").

courts have long affirmed judgments in favor of plaintiffs who, after being arrested for a criminal offense, successfully recovered damages from their accusers for malicious prosecution.[16] In a similar vein, Texas courts of appeals have recognized causes of action for malicious prosecution based upon "lunacy" proceedings that resulted in the detention of the complaining party.[17] We have not discovered any Texas authority to support the proposition that someone has a claim for malicious prosecution because of an interference with his person that did not amount to a physical arrest or detention.

IWS relies upon two foreign authorities that it contends support the proposition that a temporary restraining order or injunction restraining a person from engaging in certain acts satisfies the common-law special injury requirement.

---

[16] *See, e.g.*, *Shannon v. Jones*, 13 S.W. 477 (Tex. 1890); *Cooper v. Langway*, 13 S.W. 179 (Tex. 1890); *J.C. Penny Co. v. Ruth*, 982 S.W.2d 586 (Tex. App.—Texarkana 1998, no writ); *Rankin v. Saenger*, 250 S.W.2d 465 (Tex. Civ. App.—El Paso 1962, writ ref'd n.r.e.); *Meyer v. Viereck*, 286 S.W. 894 (Tex. Civ. App.—Galveston 1926, writ dism'd w.o.j.); *Foster v. Bourgeois*, 253 S.W. 880 (Tex. Civ. App.—Austin 1923), *aff'd*, 259 S.W. 917 (Tex. 1924); *Missouri, K. & T. Ry. Co. of Tex. v. Groseclose*, 134 S.W. 736 (Tex. Civ. App. 1911, writ denied); *Kleinsmith v. Hamlin*, 60 S.W. 994 (Tex. Civ. App. 1901, no writ); *Chouquette v. McCarthy*, 56 S.W. 956 (Tex. Civ. App. 1900, writ denied).

[17] *See Daniels v. Conrad*, 331 S.W.2d 411 (Tex. Civ. App.—Dallas 1959, writ ref'd n.r.e.); *Pendleton v. Burkhalter*, 432 S.W.2d 724 (Tex. Civ. App.—Houston [1st Dist.] 1968, writ ref'd n.r.e.); *Lindsay v. Woods*, 27 S.W.2d 263 (Tex. Civ. App.—Amarillo 1930, no writ); *Suhre v. Kott*, 193 S.W. 417, 418 (Tex. Civ. App.—San Antonio 1917, no writ).

The North Carolina Court of Appeals held that the special injury requirement was satisfied when a wife obtained a protective order against her husband which prohibited communication with her and ordered him to stay away from the marital home. *See Alexander v. Alexander*, 567 S.E.2d 211, 214 (N.C. Ct. App. 2002). This protective order is distinguishable from the TRO in the present case, insofar that the protective order there "greatly interfered with the use and enjoyment of plaintiff's personal property by ordering him to stay away from his home," and thus was not an order that exclusively interfered with a person. *Id.* In the other case, a New Jersey court of chancery held that when a distributor obtained an injunction enjoining a supplier from dealing with the distributor's competitors, the supplier had sustained a "special grievance." *Mayflower Indus. v. Thor Corp.*, 83 A.2d 246, 252 (N.J. Super. Ct. Ch. Div. 1951). However, as in the North Carolina case, the injunction did not exclusively restrain a person, as it also prevented the supplier "from using, enjoying and dealing with its property." *Id.*[18]

---

[18] IWS also relies upon other foreign authorities examining the question of whether an injunction may give rise to a special injury, but it is apparent that the parties subject to injunction in those cases had been deprived of the use and enjoyment of their property. *See Bank of Lyons v. Schultz*, 399 N.E.2d 1286, 1287–88 (Ill. 1980) (injunction prohibiting widow from receiving insurance proceeds); *N. Oil Co. v. Socony Mobil Oil Co.*, 347 F.2d 81, 83 (2d. Cir. 1965) (injunction prohibiting removal and reassembly of purchased storage tanks); *Black v. Judelsohn*, 251 A.D. 559, 559 (N.Y. App. Div. 1937) (injunction prohibiting manufacturer from using machines that allegedly contained patent-infringing components).

IWS also relies upon a successful malicious prosecution case premised on an injunction that prevented a school board from permitting a contractor to work on a construction project. *See Sigl, Inc. v. Bresnahan*, 216 A.D. 634, 634 (N.Y. App. Div. 1926). However, this case is not persuasive because the plaintiff in that malicious prosecution suit was the contractor rather than the school board which was actually enjoined, *see id.* at 639, and following *Texas Beef*, third parties who suffer the incidental effects of an injunction against another party have not thereby suffered a special injury. *See Tex. Beef*, 921 S.W.2d at 210.

We must decide whether the TRO in this case satisfies Texas's special injury requirement. In making our determination, we bear in mind the policies of the rule, which include "assur[ing] good faith litigants access to the judicial system" and limiting "needless and endless vexatious lawsuits." *See Tex. Beef*, 921 S.W.2d at 209 (quoting *Martin*, 578 S.W.2d at 768). These policies command strict adherence to the requirements of the malicious prosecution tort. *See Pendleton*, 432 S.W.2d at 728; *accord Parker v. Dallas Hunting & Fishing Club*, 463 S.W.2d 496, 499 (Tex. Civ. App.—Dallas 1971, no writ). To recognize a special injury because a company and its employees were temporarily enjoined from contacting certain parties would effectively lower the special injury hurdle beneath what Texas courts have historically allowed. The lowered hurdle would discourage good faith litigants from safeguarding their rights by seeking temporary restraining

25

orders, the purpose of which is to maintain the status quo between parties for a relatively short period. *See Cannan v. Green Oaks Apts., Ltd.*, 758 S.W.2d 753, 755 (Tex. 1988); TEX. R. CIV. P. 680. It would also incentivize successive litigation by giving parties who were only temporarily subject to a limited restraint the prospect of recovering all their litigation-related expenses. Such consequences would be at cross-purposes with the policies underpinning the special injury requirement.

In light of the foregoing policy interests and Texas precedents limiting special injury to physical restraints on a person or physical seizure of property, we hold, as a matter of law, that the TRO granted in favor of Airgas did not cause a special injury to IWS or its employees so as to support a claim for malicious prosecution. This result accords with multiple Texas authorities stating that only "physical interference" with a person, such as an arrest or detention, satisfies the special injury requirement. *See Tex. Beef*, 921 S.W.2d at 209; *Ross*, 892 S.W.2d at 128; *Bell*, 788 S.W.2d at 430. The result also comports with § 677 of the *Restatement*, which defines a special injury as one party causing another "to be arrested or deprived of the possession of his land or chattels or other things." *See* RESTATEMENT (SECOND) OF TORTS § 677. The TRO in this case did not physically arrest or detain IWS or its employees, nor did it deprive them of their property. Therefore, there was legally insufficient evidence to sustain the jury's finding that

26

Airgas had maliciously prosecuted IWS in the underlying litigation. *See City of Keller*, 168 S.W.3d at 827; *Havner*, 953 S.W.2d at 711.

We sustain Airgas's first issue. Consequently, it is unnecessary to address Airgas's other issues raised on appeal. *See* TEX. R. APP. P. 47.1.

## II.    Individual Employees' appeal

The Individual Employees' claims for malicious prosecution against Airgas were dismissed on Airgas's motion for partial summary judgment. Among other points, that motion asserted that the Individual Employees "have not properly alleged the requirement of special damages" and that "[t]here are no special damages to any plaintiff as that requirement is interpreted at law." Thus, Airgas effectively argued that "there is no evidence of one or more essential elements" of the Individual Employees' malicious prosecution claim. TEX. R. CIV. P. 166a(i). In their second issue on appeal, the Individual Employees challenge the dismissal of their malicious prosecution claim on Airgas's no-evidence ground.[19]

We review a trial court's decision to grant a motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We review the summary-judgment evidence in the light most favorable to the nonmovant, crediting evidence favorable to that party if reasonable jurors could,

---

[19]    In their first issue, the Individual Employees challenge another ground on which Airgas moved for summary judgment: There is no evidence that the underlying suit terminated in the Individual Employees' favor, which is a necessary element of a malicious prosecution claim.

27

and disregarding contrary evidence unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). When, as in this case, the trial court does not specify the ground upon which it relied for its ruling, we will affirm if any theory advanced by movant in its summary-judgment motion is meritorious. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

In general, a party seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *Finger v. Ray*, 326 S.W.3d 285, 289–90 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Once the movant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to raise a fact issue on the challenged elements. *See* TEX. R. CIV. P. 166a(i) ("The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact."). A no-evidence summary judgment will be sustained on appeal when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered by the nonmovant to prove a vital fact, (3) the nonmovant offers no more than a scintilla of evidence to prove a vital fact, or (4) the nonmovant's evidence

conclusively establishes the opposite of a vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

The only evidence of special injury that the Individual Employees presented in response to Airgas's summary-judgment motion was the temporary restraining order preventing them from communicating with employees and certain customers of Airgas. As we already held with respect to Airgas's appeal, the TRO in the underlying litigation did not produce a special injury as a matter of law. Because the Individual Employees failed to produce evidence of a special injury in response to Airgas's summary-judgment motion, we hold that the trial court did not err in dismissing the Individual Employees' claims for malicious prosecution. *See* TEX. R. CIV. P. 166a(i); *King Ranch*, 118 S.W.3d at 751.

We overrule the Individual Employees' second issue. Because the trial court could have dismissed the Individual Employees' claims on the special-injury ground raised in Airgas's and Sparks's motion, we do not examine the Individual Employees' first issue on appeal. *See* TEX. R. APP. P. 47.1; *Joe*, 145 S.W.3d at 157.

## Conclusion

We reverse the judgment of the trial court in part, insofar as it awards money damages to IWS, and we render judgment that IWS take nothing. We affirm the judgment in all other respect.


Michael Massengale
Justice

Panel consists of Chief Justice Radack and Justices Massengale and Huddle.